### A. H. BAKER AND WIFE v. PHOEBE M. WESTCOTT.

No. 2663.

1.  **Authentication—Acknowledgment of Deed.**—Article 7418a, Paschal's Digest, construed; and *held*, that under that article, which was enacted in 1874 to cure defective acknowledgments of deeds and their registration, the acknowledgment of a deed to Texas land before a notary public of another State in 1841 was validated, and its registration made prior to the passage of that statute was legalized.

2.  **Bond for Title—Deed.**—An instrument executed in Texas in 1841 binding the maker to convey to a citizen of another State land situated in Texas whenever such citizen should become a citizen of Texas, which contains the language usually used where conveyances were made under the civil law by notarial act, such as "I dispossess myself of, and my heirs and assigns relinquish the dominion and possession of the tract of land," etc., and "I pray the courts of competent jurisdiction to declare and compel me, my heirs, and assigns to perform the same," etc., passed the title.

3.  **Consideration.**—Such an instrument was not void for want of a consideration expressed on its face, and the omission to recite a consideration did not affect its validity. The grantor could only avoid the deed for want of a consideration, if at all, by affirmative evidence that the instrument was voluntary and that no consideration in fact passed.

4.  **Deed to an Alien.**—Under the Constitution of the Republic of Texas land conveyed to an alien was subject to escheat, but as between the parties to the conveyance and their privies the conveyance was good. If the alien when the deed was made was a citizen of the United States and remained such until after Texas became by treaty a member of the Federal Union the title became indefeasible.

APPEAL from Jefferson. Tried below before Hon. W. H. Ford. The opinion states the case.

*O'Brien & John,* for appellants.—The court erred in admitting in evidence said instrument purporting to have been executed on the 16th day of June, 1841, by Harvey P. Savery to John Wescott, over the objection of defendants "that it had never been properly acknowledge and authenticated for record." Hart. Dig., art. 2777; Pasch. Dig., art. 4978; Id., art. 7418a.

The court erred in admitting said instrument of June 16, 1841, in evidence over the objection of defendant that it was an executory contract, and neither expressed nor imported any consideration. Secrest v. Jones,

21 Texas, 132; Wallace v. Wilcox, 27 Texas, 67; Vardeman v. Lawson, 17 Texas, 15; Boze v. Davis, 14 Texas, 331; Short v. Price, 17 Texas, 402, 403; Story's Eq. Jur., pars. 433, 706, 706a, 973, 987, note 1; Ellison v. Ellison, 6 Ves., 662; Ex Parte Pye, 18 Ves., 149; Bunn v. Winthrop, 1 John's Ch., 336; Rucker v. Abell, 8 B. Monr., 566; Adams' Eq., 78, marginal; 1 Chitty's Blacks., book 2, 1872, p. 296, marginal.

The court erred in admitting said instrument as evidence over the objection of defendant that the condition subsequent of said contract had neither been alleged nor proven to have been fulfilled by the grantee (obligee) or his heirs.    Scarborough v. Arrant, 25 Texas, 131, 137.

Being executory, with reservation of the legal title in the obligor and no recital in it or proof *aliunde* the instrument of payment of any consideration, it vested no legal or equitable right or title in the said John Westcott or his heir, the plaintiff, to said land.    Hughes v. Lane, 6 Texas, 291, 292; De Cordova v. Smith, 9 Texas, 129, 144–152; Lewis v. Cole, 60 Texas, 341; McKin v. Williams, 48 Texas 89; Carlisle v. Hart, 27 Texas, 354; Hodges v. Johnson, 15 Texas, 570; McFaddin v. Williams et al., 58 Texas, 625.

*Perryman & Gillespie*, for appellee.—The instrument executed by Harvey P. Savery to John Westcott was properly acknowledged and authenticated, and the court did not err in admitting the same in evidence as a link in the chain of title of appellee.    Gen. Laws 14th Leg., p. 152; 2 Sayles' Civil Stats., art. 4308, note 5; Monroe v. Arledge, 23 Texas, 478.

The instrument both expresses and imports a consideration.    Rev. Stats., art 4488; 2 Whart. Law of Ev., sec. 1045; Williamson on Real Prop., 4 ed., p. 144; Fishburne v. Ferguson, 28 Cent. Law Jour., p. 87.

The instrument by its language vested the legal title in Westcott absolutely when he became a citizen of Texas, and no other act upon his part or upon the part of Savery was necessary to divest Savery of the legal title and invest the same in Westcott.

GAINES, ASSOCIATE JUSTICE.—The appellee becoming the sole plaintiff by the amended petition filed in this case in the court below, sued to establish her title to and to recover possession of a certain tract of land fully described, it being part of a league survey granted to H. P. Savery in 1835 by a title extended by Special Commissioner George A. Nixon.    She alleged that Savery, the original grantee, by an instrument executed by him in 1841, conveyed the title to one John Westcott and bound himself to make title to the said Westcott whenever the latter should become a citizen of Texas; that Westcott became a citizen of Texas in 1859 and subsequently died, having made his will by which he devised the land so conveyed to his son John H. Westcott, and that John H.

Westcott had since died, leaving plaintiff as his sole heir. The defend-ants pleaded not guilty, and also specially alleged that defendant Hattie P. Baker was sole heir of H. P. Savery and as such entitled to the own-ership and possession of the land in dispute, and prayed that the instru-ment under which plaintiff claims should be removed as a cloud upon her title. The evidence and admissions of the parties show beyond con-troversy that the plaintiff has whatever title John Westcott acquired in the land in dispute, and that defendant Hattie P. Baker has all the title in the same of which H. P. Savery died seized. The determination of three leading questions will dispose of the case.

The first is as to the admission in evidence of the instrument under which plaintiff claims. The original instrument was lost, but proof of its loss was waived, and it was agreed that the record of the instrument as it appeared in the registry of deeds might be offered, subject however to all legal objections to "the record or certified copies thereof." The defendants objected to the introduction in evidence of the copy on the ground that the deed was never properly acknowledged so as to admit it to record. The form of the acknowledgment is a substantial compli-ance with the statute, but it was made in Cincinnati, Ohio, before a no-tary public, and is dated the 16th day of June, 1841. At this date there was no law of the Republic of Texas which authorized a notary public in one of the States of the United States to take acknowledgments of writ-ten instruments for the purpose of admitting them to record. But in 1874 an act was passed which provided that instruments which had been properly acknowledged out of this State and in any State of the United States before an officer authorized to take such acknowledgment by the laws existing at the date of the act should be held to be duly acknowl-edged, and that if also registered the instrument should be considered duly registered with the "full effects and consequence of existing laws." Pasch. Dig., art. 7414a: By the law in force at the date of that act an acknowledgment taken before a notary public in another State was legal. Pasch. Dig., art. 7418. The validity of the Act of 1874 as an enabling and healing statute can not be questioned (Butler v. Dunagan, 19 Texas, 559), and it cures the original defect of the want of power in the notary who took the acknowledgment. It also made valid the original regis-tration. We are of opinion that the record was properly admitted in evidence—the predicate for the introduction of secondary proof having been laid by the agreement of parties.

The second question is, does the written instrument in controversy purport to convey the equitable or the legal title? In its general outline it is in the form of a bond for title; but the form of the instrument is a matter of no moment if it manifests the intention of the grantor to convey to the grantee the entire title by the very terms of the instrument itself. By the writing in controversy (which is dated in 1841 and is

under seal) Savery binds himself in the sum of ten thousand dollars to make title to Westcott (who is recited to be "of the city of Cincinnati, in the State of Ohio") to the land in controversy whenever he shall become a citizen of Texas, or to any person a citizen of Texas whom he may designate, and after the description of the land reads as follows:

"I dispossess myself of and for my heirs and assigns relinquish the dominion and possession of the said tract of land before described, which I have acquired by the before mentioned title, in favor of said John Westcott, that whenever he becomes a citizen of the Republic of Texas, or any person or persons being a citizen or citizens of the said Republic of Texas to whom he may transfer this covenant, his heirs or assigns may enjoy and possess the same as any other thing acquired under just and legal title, and who for the rights and privileges may hold and legally represent, and I confer upon the said John Westcott as ample power as I may possess to enter upon said land in person, by his representative or representatives, his or their heirs or assigns, to cut and take away the timber and grass thereon, to occupy, use, lease, or dispose thereof by sale, to any citizen of Texas; and I bind myself, my heirs, and assigns to make good this covenant to convey as aforesaid, and to the observance of all the above bind myself, my person, and obligate my property, present and future; and do hereby renounce the laws of '*non innumerata pecunia no intresque y pruebia*,' and all other laws which favor me or which would enable me to invalidate this instrument. And I pray the courts of competent jurisdiction to declare and compel me, my heirs, and assigns to perform the same under all the rigor of the law as though it were a definite sentence of a competent court of jurisdiction on a matter adjudicated, consented, and agreed to, for as such I will admit it, the testimony," etc.

We think it apparent from this language that a doubt existed in the minds of the parties as to the right of aliens to receive a conveyance of lands situate in the Republic of Texas, but we think it also apparent that it was the intention of the grantor by the terms of the instrument presently to convey to the grantee the title of the land as fully and completely as the laws of the Republic would permit.

The words "I dispossess myself of and for my heirs and assigns relinquish the dominion and possession" of said tract of land in favor of said John Westcott, import that it was intended the entire ownership of the land should pass. The word "dominion" means perfect control in right of ownership, and indicates that it was the intention to make the instrument as effectual as a conveyance as it was possible for the parties to make it. "Dominion in full is defined to be the right in a thing, from which arises the power of disposition and the right of claiming it from others." Coles v. Perry, 7 Texas, 145; 1 White's Recopilacion, 342. See also word "Dominicum," in Bouv. Law Dic.; and Whart.

Law Dic.   The word was doubtless used in the instrument in question in the sense of the Spanish law, as other expressions used seem clearly to indicate.   It was also doubtless the purpose of the parties that the obligor should be bound to make a further assurance of title to Westcott whenever he should become a citizen of the State or to any person a citizen of the State to whom he might transfer the covenant.   If, however, it conveyed the title we do not think an obligation to make further title would destroy its effect as a conveyance.   The transaction took place after the adoption of the common law, and no technical words were necessary in order to make a conveyance under that law.   The Act of February 5, 1840, gave a form of conveyance, but provided that "other forms not contravening the laws of the land should not be invalidated."   Pasch. Dig., art. 1000.

The point is made that the instrument is invalid because it does not show a consideration.   If the consideration was that Westcott should become a citizen of the Republic, this would be sufficient.   But we incline to the opinion that this is not what the parties meant.   If, however, the matter were doubtful and it were necessary that a consideration should be shown to support the contract, it would be our duty to give it the construction that would make it valid and to hold that such in fact was the consideration.   But we do not think it necessary that a consideration should appear upon the face of the conveyance itself or by pleading and proof.   At common law a deed of feoffment, which had to be accompanied by livery of seisin, was not required to show a consideration.   In a bargain and sale the bargainee was required to show, either by a recital in the deed or by other evidence, that the conveyance was not voluntary.

We are not aware that the technical distinctions existing between conveyances at common law have ever been recognized as being applicable to conveyances in this State.   The statute in force when the instrument under consideration was executed (Pasch. Dig., art. 997) merely required that the conveyance should be in writing and signed and sealed by the grantor in presence of two witnesses, or signed and sealed and acknowledged by him before an officer authorized to take such acknowledgment. No livery of seisin was necessary.   The constructive prossession goes with the title, and it is to be presumed that the formality of a livery of seisin was intended to be dispensed with.   Whenever the language of the conveyance evidences the intention of the grantor to convey the entire dominion, ownership, and control of the land immediately to the grantee, it should be held as effectual for this purpose as any other conveyance by either of the modes of transferring title recognized by the common law. That a consideration is not necessary to the validity of a deed conveying land, has been held in the courts of many of the States.   Ruth v. Ford, 9 Kas., 17;  Perry v. Price, 1 Mo., 553;  Doe v. Hurd, 7 Blatchf., 510; Green v. Thomas, 11 Me., 318;  Marshall v. Fish, 6 Mass., 24.   If the in-

strument in this case was a mere executory contract, the rule of equity would probably require proof of a consideration in order to enforce it, although this is ordinarily presumed from the use of a seal. But we think this instrument in effect a deed which conveyed the legal title to Westcott. If it were competent at any time for the grantor or his heirs to avoid it for want of a consideration, this could only be done by affirmative proof of the fact that the conveyance was purely voluntary.

But it is further claimed that the conveyance was void because the grantee was at the time of its execution an alien. The Constitution of the Republic contained this provision: "No alien shall hold land in Texas except by titles emanating directly from the government of this Republic; but if any citizen shall die intestate or otherwise, his children or heirs shall inherit his estate, and aliens shall have a reasonable time to take possession and dispose of the same in a manner hereafter to be pointed out by law." Pas. Dig., art. 43.

This was construed by the Supreme Court of the United States in the case of Osterman v. Baldwin, 6 Wallace, 116, and by this court in Spear v. Andrews, 48 Texas, 567. In both cases it was held in effect that a conveyance to an alien during the days of the Republic was subject to be escheated by a proceeding in the nature of office found at the instance of the government, but that as between the parties to it and their privies it was good.

It was also held in Osterman v. Baldwin, *supra*, that upon the annexation of Texas to the Union a citizen of another State ceased to be an alien, and that a conveyance made to him while an alien then became indefeasible. The rule at common law was that although an alien could not hold land against the will of the government, yet he might receive a conveyance, and if he became naturalized before the land was escheated his title became perfect even against the government. Harley v. State, 40 Ala., 689; Jackson v. Green, 7 Wend., 333.

We think that under the conveyance Westcott took a title subject to be escheated at the suit of the Republic, and that upon annexation his title became indefeasible.

We conclude that the instrument under which the plaintiff claimed was properly admitted in evidence, that it conveyed the perfect legal and equitable title of the land to John Westcott, whose title she now has, and that therefore upon the undisputed evidence in the case she was entitled to recover.

The judgment is accordingly affirmed.

*Affirmed.*

Delivered February 26, 1889.