**NOLAN et ux. v. YOUNG et al.** (No. 1608.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 18, 1920.)

1. Contracts ⏤53 — Slightest consideration sufficient in absence of fraud.

It is not necessary that the consideration for a contract be adequate in point of actual value; the slightest consideration, in the absence of fraud, being sufficient to make the most important agreement binding.

2. Contracts ⏤53—Inadequacy of consideration alone insufficient to render contract invalid.

Inadequacy of compensation is not alone sufficient to render a contract invalid.

3. Cancellation of instruments ⏤37(5)—Allegations necessary in petition attacking contract on account of inadequacy of consideration.

A petition, assailing an option agreement on the ground that the consideration is inadequate, should specifically allege that the consideration was inadequate, alleging the facts showing its value, together with the excuse for giving the option upon the consideration agreed upon.

4. Evidence ⏤419(9), 471(29) — Testimony that consideration for option was nominal incompetent.

In an action to cancel an oil lease, which gave the lessee the option to sink an oil well before a certain time, the court properly refused to permit plaintiff to testify that the consideration recited, of $10 for the option, was not considered by either of the parties as any consideration supporting the contract and was only nominal, and was not paid as an inducement for the execution of the lease contract, and that the sole inducement was a hope entertained by the lessor that he would secure the sinking of a test well near the land and royalties, etc., on objection that such evidence was a conclusion, and violated the parol evidence rule.

5. Cancellation of instruments ⏤37(5) — Fraud inducing contract on inadequate consideration must be alleged.

Before inadequacy of consideration may be shown, where cancellation of a contract is sought on the ground of fraud, it should be alleged that such fraud induced the agreement for the consideration named.

---

⏤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Cancellation of instruments ⊜⇛51—Duty to investigate as to form of lease should be separated in instructions from duty to investigate representations of fact.**

In' an action to cancel an oil lease on the ground of fraud, the court in its instructions should have separated for the jury invitation as to form of the lease from an invitation by the defendants to investigate representations made and relied on for cancellation.

**7. Appeal `and error ⊜⇛230 — Objections to charge must be called to attention of court.**

To authorize review, objections to the charge of the court must be called to the attention of the court, before the charge is read to the jury.

**8. Trial ⊜⇛261 — Request relating to given charge properly refused where not on the same issue as the given charge.**

A request for a further instruction relative to portion of court's charge is properly refused, where the request is not on an issue presented by that portion of the charge, but rather contradictory of it.

**9. Mines and minerals ⊜⇛59—Instruction that defrauded lessor should have used diligence to ascertain falsity of representations erroneous.**

In an action to cancel an oil lease on the ground of fraud, an instruction requiring the jury, in order to find for plaintiff, to find that plaintiff exercised diligence to ascertain the falsity of representations relied on by him, was erroneous.

**10. Appeal and error ⊜⇛216(3) — Party aggrieved by incorrect charge must request correct charge, in absence of objection. ·**

Where the court charges on an issue incorrectly, if the charge is not objected to, the aggrieved party is required to request a correct charge on that issue, in order to present error in the court's charge and in the refusal of the requested charge.

**11. Contracts ⊜⇛94(5) — Party investigating bound by everything proper investigation would disclose.**

If a party to a contract undertook to investigate and to discover for himself the truth or falsity of representations, whether invited or not, before he executed the contract, he was bound by everything a proper investigation would disclose.

**12. Trial ⊜⇛194(11), 240—Requested instruction in action to cancel oil lease on weight of evidence and argumentative.**

A requested instruction, in an action to cancel an oil lease on the ground of fraud, that, if the jury found that defendant did not invite plaintiff to investigate the truth or falsity of verbal representations, then a failure to make any investigation would not bar him from canceling the contract, and he owed no duty to investigate, was properly refused, as being on the weight of the evidence and argumentative.

**13. Trial ⊜⇛260(9) — Repetition of instructions unnecessary.**

Where trial court, on plaintiff's request, charged the jury that, in order to find for plain-

tiff, it was not necessary that they should find all of the alleged grounds for canceling oil lease to be false or material, but, if they found any one or more of them to be so, to find for plaintiff, it was not necessary to repeat the issue by giving separate requested charges regarding each false statement relied on.

**14. Appeal and error ⊜⇛544(1)—Exceptions, bill of ⊜⇛56(1)—Bill necessary to bring up alleged error of court in refusing to give additional instructions asked for by jury.**

An assignment that the court erred in refusing to give additional instructions, which the jury asked for in writing, cannot be considered on appeal, where there is no bill of exception in the record bringing up the matter, although there is a statement signed by appellant's counsel, not approved or ordered filed by the judge, to the effect that the jury requested certain additional instructions, and that the court refused the request.

**15. Trial ⊜⇛312(1)—Additional instructions on request by jury discretionary.**

Whether or not the court should give additional instructions on request by the jury must be left to some extent to the discretion of the trial court, and a case will not be reversed on account of a ruling on such a request, unless abuse or injury is shown.

**16. Appeal and error ⊜⇛1069(3)—Refusal to give additional instructions on request by jury not prejudicial.**

In an action to cancel an oil lease, where the court had instructed to find for certain defendants certain fractional interests in the lease, the jury must have understood therefrom that they could find the lease valid as to some and invalid as to others, and there was no reversible error in refusing an additional instruction on request by jury containing the query: "Can we grant judgment on part without canceling the whole lease?"

Appeal from District Court, Hemphill County; W. R. Ewing, Judge.

Suit by John R. and Belle Nolan, his wife, against John Young and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Sanders & Jennings and C. C. Shaller, all of Canadian, for appellants.

Hoover. & Willis and Frank Willis, all of Canadian, for appellees.

HUFF, C. J. Nolan and wife sued John Young, Will Crow, Geo. B. Owens, and Newton P. Willis, who, it is alleged, composed a copartnership, under the name of the Canadian Star Oil & Gas Company, which is also made a party defendant. The suit is to cancel an oil lease on the alleged ground of fraud, inducing the plaintiffs to make a lease contract by false representations, which are alleged substantially as follows: That defendant Young, in order to induce plaintiff to execute the lease, represented that he had already secured almost enough land for the

⊜⇛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

purpose of sinking a test well or wells, and he wanted plaintiff's land to make enough acreage, and that the sinking of a test well on the land was assured; that he had received the bills of lading for the material and machinery to put down the well; that, if plaintiff did not lease to defendant said land, the well would be located further away from plaintiff's real estate; that defendant had, at that time, a geologist on the field, ready to make, and was making, a location of said test well; that if, for any reason, work should not be begun on the sinking of the well as represented, defendant would return to plaintiff the lease contract, and the same should not be filed for record. Defendant further represented that a drilling contract between C. H. Shaller and Allen & Paylor for the sinking of a test well on land adjoining plaintiff's land had been canceled, and that Allen and Paylor had left the country; that such representations were false, and made for the purpose of inducing plaintiff to execute the lease, and that he believed the same, and, relying upon them, executed the contract; that the lease had not been used for the purpose of sinking a test well on the lands represented, but had been assigned to the Canadian Star Oil & Gas Company, a copartnership composed of the above-named defendants, and for other purposes.

The case was submitted to a jury by the trial court on a general charge; the jury finding a general verdict in favor of all the defendants. The trial court, however, instructed the jury to find for Geo. Owens and Newton P. Willis for a one-fourteenth interest each in the lease contract. The terms of the lease sought to be canceled are substantially that, for the sum of $5 cash paid, as a consideration, together with other covenants and agreements of the lessee, John Young, to be paid, kept and performed, the lessor, Nolan, granted, demised, leased, and let unto the said lessee 960 acres of land, described, for the sole and only purpose of mining and operating for oil and gas, etc., for a period of five years, and as long thereafter as either oil or gas was produced in paying quantities. In consideration of the lease the lessee agrees to deliver one-eighth part of all oil produced or saved from the leased premises to the lessor, and a certain sum per well if gas only is produced, and a certain sum for gas produced from oil used off the premises. If no well be commenced on or before the 1st day of May, 1920, this lease terminates as to both parties, unless the lessee on or before that date pay or tender to the lessor $960, which shall operate as a rental and cover the privilege of deferring the commencement for 12 months from said date, etc.

[1, 2] The first assignment is based on the ruling of the court in sustaining appellee's exception to the fifth paragraph of appellant's petition. That paragraph is substantially that there was no consideration paid or promised by John Young for the lease; that only a nominal consideration of $10 was paid, which was no consideration, and was not considered at the time as any consideration, for the lease. The motive which induced plaintiff to sign said lease was the securing of a drilling contract on or near his land, and the consequent testing of his land for oil, gas, and minerals, and the prospective royalties which he would receive under the terms of said lease contract; that the contract was therefore void ab initio, the $10 not being considered by the parties as consideration for the execution of the lease, and there being no promise to do or perform any other act or thing. The exception sustained is:

"Because the same shows upon its face that there was a good and valuable consideration, to wit, $10, paid, and the promise to secure a drilling contract or pay the annual rental therein specified of $960 per year."

The plaintiff tendered the $10 into court as a condition to the right of cancellation. It is also alleged the market value of the one-year option and of each year's rental was $1 per acre. The appellant asserts by proposition that an oil lease, not supported by a consideration, is void. This proposition may be conceded, but appellant does not allege a nudum pactum, but alleges there was $10 paid. True, it is alleged that this was no consideration—a mere nominal sum, and the parties did not consider it a consideration. Ten dollars in this country has a value, and is of value. Where the consideration paid to support a contract is of value the contract is not a nudum pactum. It is not necessary that the consideration be adequate in point of actual value. The slightest consideration, in the absence of fraud, is sufficient to make the most important agreement binding. Allen v. Stephanes, 18 Tex. 672; Moore v. Lowery, 27 Tex. 541; Riddle v. Bush, 27 Tex. 675; Pearson v. Hudson, 52 Tex. 361; Odle v. Frost, 59 Tex. 686. Misrepresentation is alleged as inducing the contract, but not as affecting its terms or its character, or that appellant would not have accepted the price paid, but for the misrepresentation. The rule of common law and as generally recognized in this country is stated in Ruling Case Law, vol. 6, "Contracts," § 85:

"That the adequacy of the consideration is immaterial has been undoubted law ever since the notion of consideration began to be developed. The reason is that the parties are deemed to be the best judges of the bargain entered into. As Hobbes says, the value of things contracted for is measured by the appetite of the contractors. Accordingly the courts do not ordinarily go into the question of equality or inequality of consideration, but act upon the presumption that parties capable to contract are capable of regulating the terms of their contract, granting relief only when the inequality is shown to have arisen from mistake, misrepresentation, or fraud. A different rule would, in every case, impose

upon the court the necessity of inquiring into and of determining the value of the property received by the party giving the promise. Such a course is deemed to be impracticable. In all cases, therefore, where the assumption or undertaking is founded upon the sale or exchange of merchandise or property, or upon other than a money consideration, and the promise has been deliberately made, the law looks no further than to see that the obligation rests upon a consideration; that is, one recognized as legal and of some value. It is sufficient if it is of only slight value, or such as can be of value to the promisor."

[3] It is manifest that appellant assumed in his petition that the contract is an optional contract, but he does not set out its terms; yet the court and the parties each, as shown by the exception, took the contract into consideration in considering the sufficiency of the pleadings. We shall therefore consider the contract on this point. In doing so, however, we shall not undertake to determine its real character; that is, whether it is an option, or unilateral contract, or whether the obligations on the part of the lessee were conditions subsequent, which, if not performed, would subject it to forfeiture, or whether the obligations were mere covenants, upon the breach of which a suit might be maintained for damages, or the like. As this action was instituted before the time fixed in the contract for beginning the work, or paying the sum as annual rentals deferring operations, it may, for the purpose of this assignment, be treated as an option contract. If the $10 was paid, as alleged, the provision giving until May 1, 1920, to begin a well would not render the contract void.

"A contract by which the owner of property agrees with another person that he shall have a right to buy the property at a fixed price within a certain time is an option; and, if based upon a valid consideration, such contract is binding, and may be enforced." Williams v. Graves, 7 Tex. Civ. App. 356, 26 S. W. 334.

The appellant cites the case of Owens v. Corsicana Pet. Oil Co., 169 S. W. 192, decided by this court. This case has been frequently cited and criticized by other courts. The Supreme Court has granted a writ of error in that case and in doing so made the following notation:

"We are of the opinion that the holding that the lease contract was void, because unilateral, was erroneous. It appears to have been supported by a valuable consideration paid, though it be regarded as a contract for an option and as unilateral in its character. The contract to give an option is valid, if supported by an independent consideration. We think it questionable, however, whether a contract by which the opposite party agrees to do a definite thing within a limited period, or in lieu of it to pay a specific amount, can be regarded as unilateral."

We will be permitted to say that in the Owens Case we expressly stated:

"Nor do we commit ourselves to the proposition that a contract for an option is void when the consideration has been paid. We think, when Mrs. Owens accepted the annual and each of the quarterly rentals under this contract, she was firmly bound by the option."

It was again said therein:

"In this case we think the original payment of $28.20 was a sufficient consideration for the option for the first year."

The vital question in that case was whether the lessee could hold the lease, and not perform its obligations to drill for and produce oil, and at the same time drain the oil from Mrs. Owens' land by placing wells on adjoining land and on three sides of her land, and whether the obligation to pay $5, if the lessee desired to surrender under the circumstances of that case, was a consideration which would support the contract. It may be, as has been suggested, that the question of forfeiture or abandonment was presented under the facts of that case, rather than the validity of the lease. But, be that as it may, that case will not affect the question here under consideration. In the case of Oil Co. v. Teel, 67 S. W. 546, the contract therein was construed to be an option. As we read that case, it was determined that $1 consideration recited in the instrument would have been sufficient to support an option for two years; but there was no time for performance in the contract which may have been continued indefinitely, practically giving an option for as long as the grantee cared to have it run. The Supreme Court refused a writ of error in that case, but in doing so took occasion to correct that case on the issue of innocent purchaser (95 Tex. 586, 68 S. W. 979), and in passing said on the question of option:

"On the other hand, a promise to give an option is valid, if supported by an independent consideration. For example, if a sum of money be paid for the option, the promisee may, at his election, enforce the contract. Each of the contracts in this case purports upon its face to have been executed in consideration of the payment of $1; and, though the plaintiff below pleaded that no consideration was paid, there was no evidence that the recitals as to the consideration in the contract were not true. Whether the recital of 'one dollar'—commonly called a nominal consideration—is sufficient to support the contract we need not discuss, though there is very high authority for holding that such recital is sufficient for the purpose. Davis v. Wells, 104 U. S. 159, 26 L. Ed. 686."

This expression from the Supreme Court, especially when read in connection with the language above quoted, indorsed on the petition for writ of error in the Owens Case, and the notation made in refusing the writ in the case of Witherspoon v. Staley, quoted by us in the Owens Case, seems to indicate that in the opinion of that court $1 paid would support an option; that it would not be a nudum pactum, or the contract invalid, on the

ground alone of the inadequacy of the consideration. The sum of $28, or $25, the amount paid in the Staley Case, supra, might be merely a nominal consideration in paying for an option on a small piece of land in a proven territory, while $10 for an option on a large tract of land in a territory 100 or 200 miles from a proven field might not only be adequate, but an extravagant price.

Perhaps there is a lack of harmony in the decisions of the courts, but it seems to us at this time our Supreme Court has settled the issue on this question in favor of the action of the trial court on the pleadings in the instant case. The Court of Civil Appeals for the Second District has taken the view that one dollar paid will support an option contract. Pierce, etc., v. Woodrum, 188 S. W. 245; Emde v. Johnson, 214 S. W. 575. The cases of Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989, and Guffey v. Smith, 237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856, are of value on the issue here presented. We also find very able and full discussion on the question of consideration in two Oklahoma cases, by the Supreme Court of that state. Oil Co. v. Branine, 175 Pac. 533, 3 A. L. R. 344; Rich v. Donaghey, 177 Pac. 86, 3 A. L. R. 352. There are doubtless cases which authorize the holding that a contract may be set aside for inadequacy, but generally the courts hold inadequacy alone is not sufficient. R. C. L. vol. 6, "Contracts," § 86. And it is the rule in our state that inadequacy alone is not sufficient. See Texas cases first herein cited. However, it is believed by us that the petition assailing the contract, on the ground that the consideration is inadequate, should specifically allege that the consideration was inadequate, alleging the facts showing its value, together with the excuse for giving the option upon the consideration agreed upon. We do not think the mere statement that $10 was paid, that it was no consideration, and was nominal, would authorize the court to declare as a matter of law that the option contract was void or a mere nudum pactum. Simkins on Equity, pp. 545, 546.

[4] The second assignment may at this point be properly considered. The appellant Nolan offered to testify that $10 was the amount of money paid to the lessor by the lessee; that it was not considered by either as any consideration supporting the contract; that it was only nominal, and was not paid as an inducement for the execution of the lease contract; that the sole inducement offered and accepted as the consideration was the hope entertained by the lessor that he would secure the sinking of a test well near the land, and the consequent testing for oil and the prospective royalties he would receive under the lease contract. The trial court refused such evidence on the objection that, after the exception to clause 5 was sustained, there was no pleading to sustain the testimony;

that the testimony would necessarily be the conclusion of the witness as to what the lessee considered the sum of $10 was paid for, and because the testimony was an effort to vary the terms of the contract, which was in writing, by parol evidence, and which provided for an additional consideration of $1 per acre as annual rentals, unless drilling operations were commenced upon the land within a certain time, and whether the $10 paid was nominal was a mixed question of law and fact. We believe the court correctly excluded the evidence as offered. It will be perceived the evidence was not offered to prove that $10 was not paid, or that such sum was an inadequate consideration. If the sum paid could aid the allegation of fraud as made, appellant had the benefit of that evidence; and if the sum paid showed mala fides, or fraud could be inferred therefrom, the jury had the evidence. Appellant offered to give his opinion that it was no consideration—a mere nominal sum. The fact being admitted that it was paid, the only question then presented was: Is it of value? If it was, it will support the contract, and the court and the jury were as competent as appellant on that point. He did not offer to show it was inadequate, or testify to facts showing such inadequacy. The fact that the lessor or lessee did not regard it as a consideration, or thought it a nominal consideration, would not throw any light on the fraud alleged. The evidence that the moving motive was to get a test well on the adjoining land, or that the hope of royalties was the real consideration, would not evidence the fraud alleged. The contract executed speaks on these things; its terms are contractual. There is no complaint that the lease does not speak the agreement of the parties. The evidence, as offered, could not have defeated the consideration mentioned in the contract and admitted to have been paid.

[5] Appellant asserts by proposition that, in suits for cancellation on the ground of fraud, lack of consideration or inadequacy is admissible. The petition does not allege there was no consideration, but alleges a consideration was paid. It is not alleged the consideration was inadequate; it is inferable from the petition that the terms as expressed in the lease were satisfactory. In the absence of fraud alleged in writing the terms of the lease, appellant should not be heard to complain of its terms. The fraud alleged does not affect the terms of the lease, but consisted in facts aliunde the contract, and there was no allegation that the price was agreed upon through fraud and was inadequate. In so far as the record shows, appellant had equal means of knowing the value of the option and the terms of the lease as did the appellee. Where the minds of parties capable of contracting meet, in the absence of actual fraud leading to such agreement as to price, equity will not interfere on mere inadequacy of

price. Wells v. Houston, 23 Tex. Civ. App. 629, 57 S. W. 595; Black on Rescission and Cancellation, vol. 1, §§ 169, 170. While it is frequently said inadequacy may be shown where cancellation is sought on the ground of fraud, we believe it should show that such fraud induced the agreement for the consideration named. As above stated, that fact is not alleged. We think with reference to this case it may be said:

"If the parties, being in the situation and having the ability to do so, have expressed their own independent judgment as to the value of the subject-matter, courts of equity will not interfere. * * * Thus great inadequacy of consideration will justify the granting of relief by a court of equity, when it further appears that the grantor in a conveyance had no knowledge of the nature and value of the property which he was conveying away, while the grantee has full knowledge of the facts and neglected his duty to inform the grantor. * * * Or that the party claiming under the contract seeking to benefit by it, made false representations as to value, with intent to secure the profit for an inadequate price." Black on Rescission and Cancellation, vol. 1, § 172.

"The ordinary rule is that inadequacy of consideration per se will not set aside a contract in equity, unless attended with other inequitable circumstances; and when it is very great so that it shocks the conscience, then but slight circumstances of imposition will set the contract aside, if it was a factor in the trade." Simkins on Equity, p. 545.

It is evident from the allegations in the petition, the contract, and from the record, that the parties understood that it would take some time to prepare for the exploration for oil on the land; that until such time the lessee would not be in possession or occupancy of the land. The hope of royalties was evidently based on a remote contingency. It is quite evident that the parties believed $1 an acre annually was a fair rental for deferred commencement after the time agreed upon. And the record also shows that the price of the option was discussed by the parties in their negotiations, and that while the appellant demanded more for the option than was agreed upon, he was informed by appellee Young that $10 a section, or about that sum, was all that they were paying, and it would not be right to pay him more than they were paying others in the neighborhood. Appellant alleges $1 an acre was the market value for the option. He knew his contract did not stipulate for such amount, and he does not show he did not know, when he executed the lease, its market value. We do not think he has shown such equity by his petition as would authorize the introduction of the evidence offered on the question of inadequacy of consideration; in fact, the testimony offered does not purport to prove inadequacy, even if there was pleading to authorize evidence on that issue.

[6-12] The third assignment is that the trial court erred in refusing to give requested instruction No. 4, for the reason that the evidence, together with paragraph No. 3 of the court's main charge, led the jury to believe it was the duty of the appellant to make independent investigation as to the truth or falsity of the representation; that the charge was calculated to induce the jury to believe that an investigation as to the form or character of the lease would bar a recovery. The court should have separated for the jury invitation as to the form of the lease from an invitation to investigate the representation made and relied on for cancellation. There is no further assignment assailing the charge of the court. We find objections to the charge of the court in the record, signed by counsel for appellant; but there is nothing to show that such objections were called to the attention of the court before the charge was read to the jury as now required by the statutes. As heretofore suggested, the petition sought to cancel the contract on the ground that certain false representations were made aliunde the terms of the lease contract inducing its execution. The defendants plead in answer thereto that the appellant took time to investigate for himself the conditions with reference to the representations. The evidence shows that appellants did take more than three days for investigation, but appellant says in one or two places that it was to investigate the form of the lease, and to compare it with another lease, and to determine the general business advisability of leasing his land. There is testimony that he took time to investigate as to the representations, etc., and he stated at one place that Young told him he wanted him to be perfectly satisfied.

Charge 4, requested, sought to have the jury instructed that there was no controversy over the form of the lease; that in connection with paragraph 3 of the court's charge, if the jury found that Young did not invite appellant to investigate the truth or falsity of verbal representations, then a failure to make any investigation would not bar him from canceling the contract, and he owed no duty to investigate. The court did not charge or submit the issue of an undertaking on the part of appellant to investigate the representations as we interpret his charge. Paragraph 3 was not on that proposition, and the charge requested could not properly have formed a part of it or been explanatory of it, but would have been more in the nature of a contradiction. Paragraph 3 simply requested the jury to find if the representations were made as alleged, and to find if they were material and false, and whether they were believed by appellant to be true and whether he relied on them, and whether they induced him to make the contract and but for which he would not have made it. This charge, however, we regard as erroneous in further requiring the jury to find whether, by diligence, appellant could have ascertained the falsity of the representations. If appellant had made proper

objections at the time and brought them properly up in the record with a proper assignment, it may be this court would have been required to reverse the case, as such charge probably violated principles announced in Labbe v. Corbett, 69 Tex. 503, 6 S. W. 811. But this charge was not based on a theory of investigation. If the appellant was dissatisfied with the court's charge, in the absence of a proper objection, he should have requested a correct charge. The charge requested did not purport to submit the issue of investigation, but it was only in connection with the court's charge on a different issue. It therefore did not call the court's attention to the issue pleaded and sought to be established by an undertaking by appellant to know the truth by investigation. The rule seems to be, if the court charges on an issue incorrectly, if the charge is not objected to, the aggrieved party is required to request a correct charge on that issue, in order to present error in the court's charge and in the refusal of the requested charge. Western Union, etc., v. Goodson, 217 S. W. 183.

The charge requested was not correct, in that it sought to instruct the jury, if Young did not "invite" appellant to investigate, then "a failure to make investigation would not bar plaintiff from canceling the contract, and he owed no duty to investigate." This, as we conceive the law, was incorrect. If Nolan undertook to investigate and to discover for himself the truth or falsity of the representation, whether "invited" or not, before he executed the contract, then he would be bound by everything a proper investigation would disclose. Foster v. Bennett, 178 S. W. 1001, 1003; Garrett v. Burleson, 25 Tex. Supp. 44; Hawkins v. Wells, 17 Tex. Civ. App. 360, 43 S. W. 816. If, however, the court's charge can be held an effort on the part of the court to charge the jury that, if appellant undertook to investigate for himself, the charge might have been inaccurate. The appellant seems to have so interpreted the effect of the court's charge. In such case, under the rule, appellant should either have objected to the charge as given or requested a correct charge. In this case he did neither. The charge is defective in other particulars than those pointed out. It is, we think, upon the weight of the evidence and rather argumentative. We have had difficulty in considering this assignment. It presents no such tangible assertion of an error, when considered in connection with the record and the other charges given, as would authorize us to reverse on the error assigned. We think it more than likely that all parties upon the trial proceeded upon the wrong theory in submitting the case, and errors may be discovered upon an inspection of the record that may have influenced the verdict; but no such error is assigned as will, in our opinion, authorize a reversal.

[13] The fourth and fifth assignments of error assert error in refusing to give requested instructions 1 and 3. These charges are simply an effort to have the jury charged that false statements inducing the execution of a contract, and seeking to apply it to each specially alleged representation. The trial court had given at the request of appellant a charge directing the jury, in order to find for him, that it was not necessary that they should find all of the alleged grounds to be false or material; but if they found any one or more of them to be so, and that the appellant relied upon them, or either of them, and would not have executed the contract but for such representations so made, to find for appellant. We do not think it was necessary to repeat this issue by giving the charges requested, if they had been otherwise correct. We regard the charges as being on the weight of the evidence and rather argumentative. We think no such error is shown by the assignments as will require a reversal.

[14-16] The sixth assignment asserts error in refusing to give additional instructions as to the law, which the jury asked for in writing, to the effect as to whether they could cancel the lease in part and refuse to cancel it in part. We find no bill of exception in the record bringing up the matter. There is a statement signed by counsel, to the effect that the jury, after having retired, came back into open court, with the following request for additional instruction:

"Can we grant judgment on part without canceling the whole lease?"

This is signed by counsel for appellant, and is not approved or ordered filed by the judge. We find a specially requested charge by appellant, to the effect that John Young owned a four-sevenths interest and Will Crow two-sevenths, and the jury were instructed that they could find a verdict canceling the six-sevenths interest of John Young and Will Crow, or might give a verdict canceling the four-sevenths interest of John Young only, or might refuse to cancel either. The trial court refused this requested charge, and the bill thereon recites that the charge was requested at the time the jury asked for additional instructions, and before they had returned to the jury room, and was by the court refused, to which exception was taken. We find in another portion of the record an instrument signed by the foreman of the jury:

"We would like to know if John Young is still connected with that Oil & Gas Company of New York, or has he sold his lease to this company of the Samples land, on which he was going to put down a test well? Can we grant judgment on a part, without canceling the whole lease?"

These several instruments were filed by the clerk, but are not embodied in a bill of exceptions, or ordered to be filed by the court, and signed by the trial judge. We think the

appellant should have brought up the transaction by bill of exception showing the retirement of the jury, their return into court, and the request made by them, and whether in writing or not, and the action of the court thereon. In the absence of the bill of exceptions, we do not believe that we are authorized to consider the matter. The bill of exception to the refusal to give the requested charge does not comply with the law in our judgment. Article 1962, R. C. S. The action of the court, in giving further charge upon a proper request, we think to some extent must be left to the discretion of the trial court, and, unless abuse or injury is shown, should not reverse the case. In this case the specific interests of all the defendants were given in the petition and answer. The trial court had instructed the jury to find for Owens and Willis each one-fourteenth interest in the lease, and that, if they found Crow was an innocent purchaser, to find for Crow two-sevenths interest. We think the jury must have understood therefrom that they could find the lease valid as to some and invalid as to others, or could find a verdict as to one or more, and not as to another. We see no reversible error in the action of the court as shown by the record on this appeal, should we take the file papers as a bill of exceptions, which they were not.

No reversible error having been assigned in this court, the case will be affirmed.