**JONES et ux. v. BEVIER.**

No. 2370.

Court of Civil Appeals of Texas. Beaumont.

April 26, 1933.

Rehearing Denied May 3, 1933.

Harry Holmes, of Houston, and Pitts & Liles, of Conroe, for appellants.

Foster, Williams & Nicholson, of Conroe, and Ed. R. Campbell, of Houston, for appellee.

WALKER, Chief Justice.

On the 23d day of December, 1931, appellants, B. E. Jones and wife, Marzie Jones, instituted this suit against appellee, George M. Bevier, to cancel the following oil, gas, and mineral lease executed by them to him on the 22d day of October, 1931.

"Oil, Gas and Mineral Lease

"This agreement made this the 22nd day of October, 1931, between B. E. Jones and wife, Marzie Jones, Lessor (whether one or more), and George M. Bevier, Lessee, witnesseth:

"1. Lessor in consideration of One and no/100 Dollars ($1.00) in hand paid, of the royalties herein provided, and of the agreements of Lessee herein contained, hereby grants, leases and lets exclusively unto Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, laying pipe lines, building tanks, power stations, telephone lines and other structures thereon to produce, save, take care of, treat, transport, and own said products, and housing its employees, the following described land in Montgomery County, Texas, to-wit:

"Beginning at N. W. corner of this 100 ac. survey at a stake from which a W oak 20″ in dia. mkd X brs. N. 6 E. 16 vrs. a Pine 30″ in Diam. mkd. X Brs. S. 34 W. 5 vrs. Thence S. 30 E. 429 vrs. to stake in pond for corner. Thence S. 60 W 1201 vrs. to a stake a W. Oak 6″ in diam. mkd. X brs. N. 85 W. 3 vrs. and Red Oak 14″ in Diam. brs. N 42 E 2 vrs. Thence N 30 W 429 vrs. to a stake in Pin Oak 30″ in Diam. mkd. X. brs. S. 20 W. 4 vrs. and S. Bay 4″ in Diam. mkd. X brs. N. 55 E. 2.5 vrs. Thence N. 60 E. 1201 vrs. to place of beginning, containing 91.75 acres of land, a part of Lemuel Smith Survey, Abstract 502, it being the intention to include all land owned or claimed by Lessor in said survey or surveys. For the purpose of calculating the payments hereinafter provided for, said land is estimated to comprise 91.75 acres, whether it actually comprises more or less.

"2. Subject to the other provisions herein contained, this lease shall be for a term of five years and six months from this date (called 'primary term') and as long thereafter as oil, gas or other mineral is produced from said land hereunder.

"3. The royalties to be paid by Lessee are:

(a) on oil, one-eighth of that produced and saved from said land, the same to be delivered at the wells or to the credit of Lessor into the pipe line to which the wells may be connected; Lessee may from time to time purchase any royalty oil in its possession, paying the market price therefor prevailing for the field where produced on the date of purchase; (b) on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used off the premises or in the manufacture of gasoline or other product therefrom, the market value at the well of one-eighth of the gas so sold or used, provided that on gas sold at the wells the royalty shall be one-eighth of the amount realized from such sale; where gas from a well producing gas only is not sold or used, Lessee may pay as royalty $50.00 per week per year, and upon such payment it will be considered that gas is being produced within the meaning of Paragraph 2 hereof; and (c) on all other minerals mined and marketed, one-tenth, either in kind or value at the well or mine, at Lessee's election, except that on sulphur the royalty shall be fifty cents (50¢) per long ton. Lessee shall have free use of oil, gas, coal, wood and water from said land, except water from Lessor's wells, for all operations hereunder, and the royalty on oil, gas and coal shall be computed after deducting any so used. Lessor shall have the privilege at his risk and expense of using gas from any gas well on said land for stoves and inside lights in the principal dwelling thereon out of any surplus gas not needed for operations hereunder.

"4. If operations for drilling are not commenced on said land or on other land in Ransom house or W. Strickland surveys on or before six (6) months from this date, this lease shall then terminate as to both parties unless on or before the expiration of said six months' Lessee shall pay or tender to Lessor or to the credit of Lessor in First National Bank at Conroe (which bank and its successors are Lessor's agent and shall continue as the depository for all rental payable hereunder regardless of changes in ownership of said land or the rental), the sum of two dollars ($2.00) per acre for the number of acres then covered by this lease and not surrendered as hereinafter provided, which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. Thereafter, upon the payment or tender in like manner annually of the sum of one dollar ($1.00) per acre for the number of acres then covered by this lease and not surrendered as hereinafter provided, the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. Payment or tender of rental may be made by check or draft of Lessee mailed or delivered to Lessor or to said bank on or before such date of payment. If such bank

(or any successor bank) should fail, liquidate or be succeeded by another bank, or for any reason fail or refuse to accept rental, Lessee shall not be held in default for failure to make such payment or tender of rental until thirty (30) days after Lessor shall deliver to Lessee a proper recordable instrument naming another bank as agent to receive such payment or tenders. The down cash payment is consideration for this lease according to its terms and shall not be allocated as a mere rental for a period. Lessee may at any time execute and deliver to Lessor or to the depository above named or place of record a release or releases covering any portion or portions of the above described premises and thereby surrender this lease as to such portion or portions and be relieved of all obligations as to the acreage surrendered, and thereafter the rentals payable hereunder shall be reduced in the proportion that the acreage covered hereby is reduced by said release or releases.

"5. If prior to discovery of oil or gas on said land Lessee should drill a dry hole or holes thereon, or if after discovery of oil or gas the production thereof should cease from any cause, this lease shall not terminate if Lessee commences additional drilling or re-working operations within sixty (60) days thereafter or (if it be within the primary term) commences or resumes the payment or tender of rentals on or before the rental paying date next ensuing after the expiration of three months from date of completion of dry hole or cessation of production. If at the expiration of the primary term oil, gas or other mineral is not being produced on said land but Lessee is then engaged in drilling or re-working operations thereon, the lease shall remain in force so long as operations are prosecuted with no cessation of more than thirty (30) consecutive days, and if they result in the production of oil, gas or other mineral so long thereafter as oil, gas or other mineral is produced from said land. In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent land and within one hundred fifty (150) feet of and draining the leased premises, Lessee agrees to drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances.

"6. Lessee shall have the right at any time during or after the expiration of this lease to remove all property and fixtures by Lessee on said land, including the right to draw and remove all casing. When required by Lessor, Lessee will bury all pipe lines below ordinary plow depth, and no well shall be drilled within two hundred (200) feet of any residence or barn now on said land without Lessor's consent.

"7. The rights of either party hereunder may be assigned in whole or in part and the provisions hereof shall extend to the heirs, successors and assigns, but no change or divisions in ownership of the land, rentals, or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee. No sale or assignment by Lessor shall be binding on Lessee until Lessee shall be furnished with a certified copy of recorded instrument evidencing same. In event of assignment of this lease as to a segregated portion of said land, the rentals payable hereunder shall be apportionable as between the several leasehold owners ratably according to the surface area of each, and default in rental payment by one shall not affect the rights of other leasehold owners hereunder. If six or more parties become entitled to royalty hereunder, Lessee may withhold payment thereof unless and until furnished with a recordable instrument executed by all such parties designating an agent to receive payment for all.

"8. (Struck out.)

"9. Lessor hereby warrants and agrees to defend the title to said land and agrees that Lessee at its option may discharge any tax, mortgage or other lien upon said land and in event Lessee does so, it shall be subrogated to such lien with the right to enforce same and apply rentals and royalties accruing hereunder towards satisfying same. Without impairment of Lessee's rights under the warranty in event of failure of title, it is agreed that if Lessor owns an interest in said land less than the entire fee simple estate, then the royalties and rentals to be paid Lessor shall be reduced proportionately.

"In witness whereof, this instrument is executed on the date first above written.

"[Signed] B. E. Jones
"Marzie Jones."

For grounds for cancellation, appellants plead: "That no money or thing of value passed from defendant to plaintiff as consideration for said lease. * * * That said option being a unilateral contract, the same was subject to be revoked by plaintiff. * * * That plaintiff revoked said option * * * and said lease, if ever valid, has terminated and is of no further force and effect." Appellee answered by general demurrer, general denial, and plea of not guilty, and by certain special pleas not necessary to mention. Appellant's second supplemental petition, filed in reply to appellee's answer, though erroneously stricken by the court, presented no material issue.

The evidence was clearly to the effect that the $1 consideration recited in the lease was not paid nor payment tendered by appellee nor requested by appellants. But there was no evidence on the issues as to whether or not appellee obligated himself to appellants to pay them the $1 and whether or not appellants agreed to execute the lease on the $1 consideration. After this suit was filed, and after appellee had received notice from appel-

lants that it had been filed, and that they had canceled and revoked the lease in so far as they were able, he paid into the bank named in the lease as appellants' agent the first payment stipulated by the lease for the privilege of deferring drilling obligations. Appellants refused to accept this payment when notified that it had been made, and have not done anything since it was paid to ratify or bind themselves by the payment. Prior to the institution of the suit appellee had not performed nor attempted to perform any of the agreements and obligations assumed by him as part of the consideration for the execution and delivery of the lease.

On conclusion of the evidence verdict was instructed in favor of appellee, upon which judgment was duly entered, from which appellants have duly appealed.

### Opinion.

■ The lease, upon its execution and delivery by appellants to appellee, operated as a present conveyance of the oil and gas under the premises described in the lease, and vested in appellee a determinable fee in the oil and gas in place. Texas Company v. Davis, 113 Tex. 321, 254 S. W. 304, 255 S. W. 601; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27, 30. These cases clearly hold that an "unless" oil and gas mineral lease, such as is in issue in this case, is not a mere option or executory contract but a present grant of an interest in the land. After reviewing carefully these cases, Mr. Walker, in a very able article, Property Interests Created by Lease, Texas Law Review, vol. VII, No. 1, at page 20, says: "Rightly understood, a lease is not an executory contract but a present conveyance of an interest in land, and this is the well settled view of Texas courts today." In the recent case of Martin v. Dial, 57 S.W.(2d) 75, 81, Judge Leddy, speaking for the Commission of Appeals, says: "It is equally clear that the sale of the oil and gas lease was a sale of an interest in the land. It is no longer an open question in this state that an oil and gas lease similar to the one under consideration conveys an interest in land. The purchaser of such lease takes a determinable fee to the minerals in place." Judge Leddy supports this proposition by citing the Stephens County Case and Corsicana Petroleum Co. v. Owens, 110 Tex. 568, 222 S. W. 154, and Hager v. Stakes, 116 Tex. 453, 294 S. W. 835. Construed as a conveyance of an interest in

the land described therein, no consideration was needed to support this lease, for it is the law of this state that a conveyance of land requires no consideration. Rogers v. Rogers (Tex. Com. App.) 15 S.W.(2d) 1037; Baker v. Wescott, 73 Tex. 129, 11 S. W. 157; Robertson v. Hefley, 55 Tex. Civ. App. 368, 118 S. W. 1159; Texas Co. v. Davis, supra; 2 Tiffany, Real Property (2d Ed.) § 438. On these propositions appellee was entitled to his instructed verdict as the nonpayment of the consideration was an immaterial issue.

■ However, if a consideration was necessary, the following affirmative drilling obligation, assumed by appellee as part of the consideration for the lease, was sufficient to give it validity: "In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent land and within one hundred fifty (150) feet of and draining the leased premises, Lessee agrees to drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances." Nolan v. Young (Tex. Civ. App.) 220 S. W. 154; Burt v. Deorsam (Tex. Civ. App.) 227 S. W. 354; McCaskey v. Schrock (Tex. Civ. App.) 225 S. W. 418; McCaskey v. McCall (Tex. Civ. App.) 226 S. W. 432; Harness v. Luttrall (Tex. Civ. App.) 225 S. W. 810; Johnson v. Russell (Tex. Civ. App.) 220 S. W. 352; Security Drilling Co. v. Rathke (Tex. Civ. App.) 41 S.W.(2d) 1019, 1022; Humble Oil & Refining Co. v. Strauss (Tex. Civ. App.) 243 S. W. 528. Burt v. Deorsam, supra, answers the contention of appellants that this affirmative drilling obligation cannot constitute an independent consideration because, they say, "the law makes it the duty of the lessee in such lease, in the absence of any provision, to protect the land from drainage from wells on adjoining lands, irrespective of distance." Mr. Walker, in his article cited above at page 21, note 65, offers the following answer to appellants' proposition, which he discusses as an objection: "The objection was entirely without merit in that the lessee prior to the execution of the lease was under no legal obligation whatsoever to drill an offset well under any circumstances. This obligation was imposed upon him only by his acceptance of the lease and the possible detriment incurred thereby should be regarded as consideration for the execution of the lease paid by the lessee, the benefit of which moved to the lessor."

The judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.