FELIX G. ROBERTS AND NOEL G. ROBERTS, EXECUTORS, &c. v. SUSAN W. THORN, AND OTHERS.

Where tenants in common of a tract of land acquired their interests under different instruments, purchased at different times, and there being no agreement between them respecting the title, if one of them obtains a superior outstanding title, or as in this case, in order to protect his own doubtful title, locates and causes to be patented the land so held by them as tenants in common, such acquisition by him does not enure to the benefit of the other, although the other offer to pay his ratable proportion of the outlay and expense of his co-tenant in procuring such title.

Although, before the location made on the land held in common, the tenant in common so locating had brought suit to recover the possession of the land from a third person holding adversely to both, and had notified his co-tenant in common thereof, and requested him to furnish counsel to assist in the prosecution, which he did ; the statement of these facts in the petition can scarcely be said to be a sufficient allegation of an agreement between the parties to unite in defending and upholding the title.

It seems to be settled, that joint tenants and co-parceners are not permitted in equity to acquire an interest in the property hostile to that of the other ; and therefore a purchase by a joint tenant or co parcener of an encumbrance on the joint estate, or an outstanding title to it, is held at the election of his co-tenants, within a reasonable time, to enure to the equal benefit of all the tenants, upon condition that they will contribute their respective ratios of the consideration actually paid.

It seems that the same equity subsists between tenants in common, where the interest accrues under the same instrument, or act of the parties, or of the law, or where they have entered into some engagement or understanding with one another ; and persons acquiring unconnected interests in the same subject by distinct purchases, though it may be under the same title, are probably not bound to any greater protection of one another's interest than would be required among strangers.

The principles which have been considered in this case, in respect to the reciprocal rights and duties of tenants in common, apply where there is a community of interest in a defective title, or a superior outstanding title or encumbrance ; but if the supposed interest is worthless, or the land vacant, the parties owned nothing in it, and they could have therein no tenancy in common.

APPEAL from Nacogdoches. Tried below before the Hon. A. W. O. Hicks.

This suit was instituted by Felix G. and Noel G. Roberts, ex-

ecutors of the will of Elisha Roberts, deceased, against the administrator and heirs of Frost Thorn, deceased. The petition of the plaintiffs alleged that on or about the 24th day of September, 1834, one Adolphus Sterne claimed to own the Cordova grant of land, in Nacogdoches county, containing about three and a half leagues of land, on which day he sold and conveyed to Frost Thorn, in his life-time, one undivided half of said grant; that about the 7th day of January, 1835, said Sterne sold and conveyed the remaining undivided one-half thereof to Philip A. Sublett; that on or about the 17th day of January, 1838, said Sublett sold and conveyed to Elisha Roberts, plaintiffs' testator, two thirds of his aforesaid interest of one-half; and that the said Elisha Roberts retained his aforesaid interest during his life, and which, plaintiffs claim, yet belongs to his estate.

The petition further alleges that on or about the —— day of——, the title under which said Frost Thorn and petitioners, as executors, held said land, became exceedingly questionable ; a great portion of the land having been located upon by others ; that said Thorn had sold some portion of it, not leaving more than one league worth filing a certificate upon, which lay in two parcels, one-half of a league, or thereabouts, lying in the south-east corner of said tract, and the other half league, or thereabouts, lying for northern boundary on the north line of said tract, between the north-east and north-west corners of said surveys. That the title to said Cordova grant, as derived through said Sterne, has never yet been adjudicated, but is still considered questionable and doubtful. That these two tracts or parcels of land were, on or about the —— day of ———, by said Frost Thorn located upon in his own name, by virtue whereof patents have issued therefor to him in his individual name, from the general land office.

The petition asserts that the file, location and patents enure to the benefit of petitioners as executors, as well as to said Thorn, in proportion to their respective interests derived through said Sterne. Plaintiffs aver that they would gladly have joined said Thorn in re-locating said tracts, and have paid their proportion in carrying such location into a patent, but had no notice or in-

timation of the intention of said Thorn to make said re-location. They aver that the value of the land certificate located as aforesaid by said Thorn, did not exceed $500, and that the other expenses incident to said location of patents did not exceed $——, two-thirds of one-half whereof they offer to pay to the legal representatives of said Frost Thorn, deceased. By amended petition they allege further, that before the location and patenting aforesaid, one Bailey, being a tenant on said land, was sued by said Thorn, of the pendency whereof he gave to plaintiffs' testator notice, and requested him to furnish counsel to assist in the prosecution of it, and that said testator, and after his death the plaintiffs as executors, complied with the aforesaid request. Thereupon, they further say said Thorn abandoned and dismissed said suit, and immediately located and filed the certificates upon the land, without notifying plaintiffs or their testator of any such intention as before stated.

The petition prayed that two-thirds of the undivided half of said two parcels of land so located by and patented to the said Frost Thorn, deceased, be decreed to the heirs and legal representatives of said Elisha Roberts on payment by them of their proportionate rate of cost and expense aforesaid incurred by said Thorn to obtain said patents; the amount thereof to be ascertained on the trial of the cause. The plaintiffs prayed also for partition of the respective interests in said land.

The defendants filed a general exception to the petition, which was by the court sustained, and judgment rendered accordingly against the plaintiffs. The plaintiffs assign for error, the court's ruling above stated.

*H. C. Wallace*, for the appellants.—The rule now established is that "tenants in common are jointly seized of the entire estate, and the possession of one is the possession of all." (Story v. Saunders, 8 Hump., 663.)

The entry of one tenant in common or parcener enures to the benefit of his co-tenant or co-parcener. (Gill v. Fauntleroy, 8 B. Monroe, 177.) The theory of the law seems to be that each tenant in common is for certain purposes the agent of the other,

to guard the possession and defend the title of the lands thus held. "As joint owners they are not entitled to charge each other for the services rendered in the care and management of the joint property, unless by special agreement." (1 John. ch., 157, Franklin v. Robertson.) Each can bind the other by contracts for repairs and expenses incurred for the benefit of the common property. (Peyton v. Smith, 2 Dev. & Batt., ch., 325.)

"An agent undertaking any business for another is disabled in equity from dealing in the matter of the agency upon his own account, or for his own benefit."

. "In chancery" says Duncan, J., (in the case of Heager's executors, 15 Serg. & R., 65, 66,) "the principle is one never departed from, and is as binding as any axiom of the common law, that he who takes upon himself a trust, takes it for the benefit of him for whom he is entrusted, and not to take any advantage for himself. If the trustee or executor obtain the renewal of a term in trust, such renewal shall be for the benefit of the trust. (Holt v. Holt, 1 Chan. Cas., 191.) Nor will the circumstance of the lessor having refused to renew to the *cestui que trust*, he being an infant, differ the case. (Chan. Cas., 61.) There cannot well be a stronger proof of the inflexibility of the rule than this—he may decline to accept the lease, but if he does accept it, though the lessor would not grant the benefit to the infant, if the trustee chooses to take it, it enures to the benefit of the infant."

"Where an executor or guardian," said Kennedy, J., (in Galbraith v. Elder, 8 Watts, 81, 94, 95,) "renews a lease, though with his own money, such renewal shall be deemed to be in trust for the person beneficially interested in the old lease."

"The same principle has been applied as between mortgagor and mortgagee." (Holdridge v. Gillaspie, 2 John. ch., 30.)

"Courts of equity have said that if a trustee makes use of the influence which his situation enables him to exercise, to get a new lease, he shall hold it for the benefit of the *cestui que trust*. (1 Dow, 269; 1 Chan. Cas., 191; 1 Bro. Ch. Cas., 198.)

"Indeed, it is a general principle pervading the cases, that if a mortgagee, executor, trustee, tenant for life, &c., who have a limited interest, gets an advantage by being in possession, or behind

the back of the party interested in the subject, or by some contrivance in fraud, he shall not retain the same for his own benefit, but hold it in trust. (Lord Manners, in 1 Ball & Beatty, 46, 47; 2 Ball & Beatty, 290, 298, and see an analogous case in Hudson v. Wallace, 1 Richardson's Equity, 2, 4, 7, in which it is said there is a good will in favor of the former tenant which gives him an interest in the renewal.)

In the case of Green v. Winter, (1 John, ch. 27, 36,) it is said a trustee is not permitted to use the information he gains as trustee by purchasing for himself.

"The same principle is applied where a trustee buys in an adverse claim to the trust estate; the purchase accrues to the benefit of the *cestui que trust*, who, however, must reimburse the trustee to the extent of his outlay. (McClanahan's heirs v. Henderson, 2 Marshall, 388, 389; Morrison's executors v. Caldwell, 5 Monroe, 426, 435; Kellogg v. Wood, 4 Paige, 578, 621; 1 Lead. Cas. in Eq., by W. & T., p. 73.)

When one of two co-tenants purchases an adverse claim to land, it operates to the benefit of both, and if the title which he thus acquires is available, his co-tenant should in equity be made liable to him for half the price, or for a due proportion according to the extent of the interference. The rule is the same, whether the purchase be made before or after partition, and when a tenant in common has, after partition, purchased a conflicting claim, he should be allowed time to elect whether his whole purchase, or only the interference, shall be for the joint benefit, and to have a lien upon the land for the sum to be contributed by his co-tenant. (Venable v. Beauchamp, 3 Dana, 328; Lee v. Fox, 6 Dana, 176; Thurston v. Masterton, 9 Dana, 234, 235; and see the authorities cited in 1 Lead. Cas. in Eq., by Hare & W., p. 74.) A superior claim purchased by one joint tenant enures to the benefit of all, upon condition that they contribute ratiably to its costs. (Sneed's heirs v. Atherton, 6 Dana, 278–80.) The cases cited in appellant's brief, of Mathews v. Bliss, (22 Pick., 48,) and Smiley v. Dixon, (1 Penn. R., 439–441,) when closely examined, will not sustain the position there assumed.

In the case of Mathews v. Bliss, the facts disclosed are that the

Roberts v. Thorn.

plaintiff, in connection with others, was the owner of a certain vessel. The declaration charges that the other part owners of the vessel conspired with the master to obtain plaintiff's share of said vessel for an inadequate price. That said part owners had previously contracted with third persons for the sale of the entire vessel at a greatly enhanced price, which contract, plaintiff charges, was carefully concealed from him. The court, in delivering its opinion, say: "That tenants in common of a vessel, who are not employed jointly in the purchasing or building ships for sale, do not stand in such a relation of mutual trust and confidence toward each other in respect of the sale of such vessel, that each is bound in his dealings with the other to communicate all the information of facts within his knowledge which may affect the price or value." But they say that a different rule "may prevail in respect to any contract for the use or employment of the common property, in which relation, perhaps, they may be deemed to place confidence mutually in each other." The ground, then, upon which this case rests, is very intelligible. It goes upon the principle that when the means of information are equally accessible, and within the reach of both the contracting parties, and there has been no studied effort to conceal or misrepresent, an advantage obtained by the exercise of superior diligence will not be disturbed. There being no duty imposed upon the co-tenant to sell, he was under no obligation to disclose an advantageous prospective sale, which he would be able to make in the event of completing the purchase from the other part owner.

An agent employed to transact a particular business is bound to keep his principal informed on all matters appertaining to that business. But in regard to other business of the principal not confided to him, he occupies the position of a stranger, and cannot be compelled to disclose extrinsic circumstances, which may enhance or detract from the value of the subject matter of the contract. The law having conferred upon each tenant the right of binding his co-tenant by contracts for repairs and beneficial improvements, imposes upon him the corresponding obligation of good faith, candor and accountability. The law also has made one tenant in common the agent of the other, to make entry upon the

common possessions, and he holds as well by virtue of his co-tenant's title as of his own. But no title is perfect which does not show a possession, a right of possession, or a right of property. If, therefore, an agent be appointed by act of the parties, or be created such by operation of law, to hold possession of lands, he thereby incapacitates himself for purchasing in an outstanding title for himself in a third person, for the right of property and of possession ultimately draws the possession after it, and the conflict of interest and duty becomes apparent. The case cited by appellee from 1 Penn. R. is not a case in point. There the tenancy in common had been severed before the adverse title was purchased in, and the court, in deciding the case, make special reference to that fact.

*G. F. Moore*, for the appellees.—This was a suit by appellants to have decreed to them from appellees an undivided interest in a tract of land, upon the ground that their testator and appellee's intestate had been tenants in common of a void title under which the land had been once claimed, some time previous to Thorn's location and patent.

The rule contended for by appellants had its origin from the doctrine of trusts, and though it may apply to joint tenants and parceners, it does not to tenants in common, unless they became so by the same instrument, or there is some privity or mutual trust and confidence existing between them, under the peculiar facts of their case. (Mathews v. Bliss, 22 Pick., 48 ; Smiley v. Dixon, 1 Penn. R., 439, 441.)

If the appellants were entitled to the relief asked, their petition should show that they had asked it within a reasonable time, or account for their delay. This they have not done. (Lee & Graham v. Fox, 6 Dana, 171, 176.)

WHEELER, C. J.—The question to be determined is whether, upon the case stated in the petition, the appropriation of the land in question by Thorn as vacant land enured to the benefit of the plaintiff's testator? In Van Horne v. Fonda, (5 Johns. Ch. R., 388,) Chancellor Kent decided that one of two devisees could not

purchase an incumbrance on their joint estate and use it to sell the land, and to strip the other of his property. The chancellor said: "I will not say that one tenant in common may not, in any case, purchase in an outstanding title for his exclusive benefit. But when two devisees are in possession under an imperfect title, derived from their common ancestor, there would seem naturally and equitably to arise an obligation between them, resulting from their joint claim and community of interests, that one of them should not affect the claim to the prejudice of the other. It is like an expense laid out upon a common subject, by one of the owners, in which case all are entitled to the common benefit on bearing a due proportion of the expense. It is not consistent with good faith, nor with the duty which the connexion of the parties, as claimants of a common subject, created, that one of them should be able, without the consent of the other, to buy in an outstanding title, and appropriate the whole subject to himself, and thus undermine and oust his companion. It would be repugnant to a sense of refined and accurate justice. It would be immoral, because it would be against the reciprocal obligation to do nothing to the prejudice of each other's equal claim, which the relationship of the parties, as joint devisees, created." (Ib., 407.)

In accordance with these views, it seems to be well settled, that joint tenants and co-parceners stand in such confidential relations in regard to one another's interest, that one of them is not permitted in equity to acquire an interest in the property hostile to that of the other; and, therefore, a purchase, by a joint tenant or co-parcener, of an incumbrance on the joint estate, or an outstanding title to it, is held at the election of his co-tenants within a reasonable time, to enure to the equal benefit of all the tenants upon condition that they will contribute their respective ratios of the consideration actually given. The same equity has been considered as subsisting between tenants in common, where they hold under the same instrument. And where two tenants in common, who had heard of an adverse title, and agreed to join in defending against it, or in purchasing it, it was decided that one of them who purchased the adverse title for a small sum, must hold it in trust for the other, upon that other paying his proportion of the purchase

money. (Cited in Smiley v. Dixon, 1 Penn., 441.) But, it is said in the notes to the leading case of Reich v. Sanford, upon a review of the authorities, that "tenants in common probably are subject to this mutual obligation, only where their interest accrues under the same instrument, or act of the parties or of the law, or where they have entered into some engagement or understanding with one another; for persons acquiring unconnected interests in the same subject, by distinct purchases, though it may be under the same title, are probably not bound to any greater protection of one another's interests, than would be required among strangers." (1 L. Cases in Eq., 74, 75; Matthews v. Bliss, 22 Pick., 48.) This is believed to be a proper qualification of the doctrine as applied to tenants in common; and applied to the present case, it can not, we think, be held that the title acquired by Thorn enured to the benefit of plaintiff's testator. Their interests did not accrue under the same instrument, but they purchased at different times, by different instruments; and there is no averment of any agreement between them respecting the title. It is averred that the defendant's testator had brought suit to recover the possession, and gave notice to the plaintiff's testator of the pendency of the suit, and requested him to furnish counsel to assist in the prosecution of it, which he did. This can scarcely be said to be a sufficient allegation of an agreement between the parties to unite in defending and upholding the title. It is the statement of evidence tending to the proof of such an agreement rather than of the agreement itself. It is to be observed that it is not averred that Thorn was ever in possession, or that he had any superior knowledge or means of information respecting the state of the title, or that he made use of his co-tenancy to obtain an advantage. The only complaint is, that he located the land and obtained the title from the government without giving notice to his co-tenant. But so far as appears, his co-tenant had equal knowledge and opportunity to secure the land for himself, if he saw proper. It appears by the petition that others, as well as Thorn, were aware of the condition of the title, and had already located a considerable portion of the land.

This brings me to notice another aspect of the case which, to

my own mind, is decisive. It is not averred that the supposed title purchased of Sterne was of any value; and I think it may be inferred from the petition that it was worthless, and the land in fact vacant. If such was the case, the parties acquired nothing by their purchase, and consequently had no title or estate to create a tenancy in common. The doctrine we are considering applies where there is a community of interest in a defective title, or a superior outstanding title or incumbrance. If the inference I deduce from the statements of the petition be correct, this is not the case of a defective title, but of a want of title. In such a case, in Pennsylvania, where two persons had purchased from a third who was supposed to have a title, but who, it was afterwards ascertained, had none, the Supreme Court held that there was nothing in the supposed co-tenancy to prevent one of the parties from appropriating the land for his own exclusive benefit. (Smiley v. Dixon, 1 Penn. R., 441.) The parties took nothing by their purchase; they were not joint tenants or tenants in common, and there was no privity between them. The court recognized the doctrine which forbids one tenant to do any thing to the prejudice of his co-tenant in its full extent, but denied its application to such a case; observing that there was no privity, no confidence between the parties, and nothing done by the one to induce the other to purchase, or to confide in their purchase. The land was vacant, to be taken by the first occupant; and there existed no obligation between the parties to prevent its appropriation by one of them. These observations apply in their full force to the present case in my view of it. There was no privity between the parties; they acquired nothing by their purchase; and there was no relation of confidence or community of interest to prevent the appropriation of the land by one of them. I mention this view of the case only as the one which is most satisfactory to my mind.

We are of opinion that there is no error in the judgment, and that it be affirmed.

Judgment affirmed.