BAILEY et ux. v. SHELL PETROLEUM CORPORATION.

No. 2791.

Court of Civil Appeals of Texas. Beaumont.

Nov. 14, 1935.

Rehearing Denied July 8, 1936.

V. A. Collins, of Livingston, for appellants.

M. M. Feagin, of Livingston, for appellee.

WALKER, Chief Justice.

This suit was brought by appellants, Mr. and Mrs. V. B. Bailey, and others, against Shell Petroleum Corporation, a private corporation, to set aside, annul, and cancel the following mineral lease:

"V. B. Bailey et ux. to J. C. Jones

"8-514

"Agreement made and entered into the V 5th day of Nov. 1932 by and between V. B. Bailey et ux, Vira Bailey, man and wife of Rye, Texas, Liberty Co. hereinafter called lessor (whether one or more) and J. C. Jones, hereinafter called Lessee;

"Witnesseth; that the said lessor, for and in consideration of One and no/100 Dollars ($1.00) Dollars cash in hand paid, the receipt of which is hereby acknowledged, and of the convenants and agreement hereinafter contained on the part of lessee to be paid, kept and performed have granted, demised, leased and let and by these presents do grant, lease and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas and of laying pipe lines and of building tanks, power stations and structures thereon to produce and save and take care of said products all that certain tract of land situated in the County of Polk, State of Texas, and containing 120 acres, more or less, described as follows, to-wit:

"The full consideration of this lease is one dollar cash and $1,400.00 in Oil, payable out of one eight of the seven eights of the first oil, save and produced from the said 120 acres of land.

"Said tract of land is more particularly described by metes and bounds as follows; Being a part of the P. A. Sublett League, situated about 18 miles S. E. of the town of Livingston, Texas. (Here follows description of land.)

"It is agreed that this lease shall remain in force for a term of 10 years from date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.

"In consideration of the premises the said lessee convenants and agrees: (Here follows conditions for payment of royalty, etc.)

"If no well be commenced on said land on or before the Seventh day of November, 1933, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the State Bank at Livingston, Texas, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of $120.00 Dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only privilege granted to the date when said rentals is payable as aforesaid, but also the lessee's option of extending that period as aforesaid and any and all other rights conferred. (Here follows conditions regulating the drilling of the first and subsequent wells.)

"If, at the expiration of ten years from the date of this lease, oil or gas is not being produced on the leased promises but lessee is then engaged in drilling for oil or gas, then this lease shall continue in force so long as drilling operations are being continuously prosecuted on the leased premises; and drilling operations shall be considered to be continuously prosecuted if not more than sixty (60) days shall elapse between the completion or abandon-

ment of one well and the beginning of operations for the drilling of a subsequent well. If oil or gas shall be discovered and produced in paying quantities from any such well or wells drilled or being drilled at or after the lapse of ten years, this lease shall continue in force so long as oil or gas shall be produced from the leased promises. (Here follow conditions not involved in the construction of the lease.)

"In case of cancellation or termination of this lease for any cause, lessee shall have the right to retain under the terms hereof twenty (20) acres of land around each oil or gas well producing, being worked on, or drilling hereunder (as long as such operations are continued in good faith) such tract to be designated by lessee in as near a square form as practicable.

"In the event lessor considers that lessee has not complied with all its obligations hereunder, both express and implied before production has been secured or after production has been secured, lessor shall notify lessee in writing, setting out specifically in what respect lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by lessor. The service of said notice shall be precedent to the bringing of any action of lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee. Neither the service of said notice nor the doing of any acts by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligations hereunder.

"Title to the minerals vested in grantee under this grant shall not end or revert to grantor until there is a complete, absolute and intentional abandonment by grantee of each and all of the purposes, expressed or implied, of this grant and every part and parcel of the premises described in this grant.

"Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the lessee shall have the right at any time to redeem for lessor by payment any mortgage, taxes, or other liens on the above described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder thereof, and lessor hereby agrees that any such payment made by the lessee for the lessor shall be deducted from any amounts of money which may become due the lessor under the terms of this lease.

"In Testimony whereof, we sign, this the seventh day of November, 1932.

"V. B. Bailey.
"Vira Bailey."

The acknowledgments of Mr. and Mrs. Bailey to this instrument were in all respects regular.

Mr. and Mrs. Bailey attacked this lease on the ground that the original lessee secured the lease from them by fraud and that the notary failed to take Mrs. Bailey's acknowledgment in the manner prescribed by law. Appellee's answer was by general denial, innocent purchaser, etc.

The leased premises were in two tracts, one including 80 acres, and the second including 40 acres. On the defense of innocent purchaser, judgment was instructed in favor of appellee for the 80-acre tract. The issue of fraud and of innocent purchaser as to the 40 acres was sent to the jury, all answered in favor of appellants. The jury also found that the acknowledgment of Mrs. Bailey was improperly taken. On the theory that the verdict of the jury on the issue of innocent purchaser was without support, the trial court rendered judgment in favor of appellee for the 40 acres non obstante veredicto.

## Opinion.

In our judgment the verdict of the jury on the issues of fraud are fully supported by the testimony. But there was no evidence to the effect that appellee was not an innocent purchaser of the 40 acres. The law is clear that the burden rested upon appellants to show that appellee was not an innocent purchaser and the evidence failed to raise that issue, Commonwealth B. & L. Ass'n v. Howard (Tex.Civ.App.) 61 S.W.(2d) 546; Kinard v. Sims (Tex. Civ.App.) 53 S.W.(2d) 803; Elliott v. Wallace (Tex.Civ.App.) 42 S.W.(2d) 1058; Sperry v. Moody (Tex.Civ.App.) 269 S. W. 272; Teagarden v. R. B. Godley Lumber Co., 105 Tex. 616, 154 S.W. 973, provided the instrument in question was of such a nature that appellee could claim the defense of innocent purchaser. The sum total of the evidence was the mere fact that Bailey and wife, before appellee acquired its interest, put on record

a power of attorney to G. H. Parker, disclosing the fraudulent acts found by the jury. When appellee acquired its interest, it did not, in fact, know of the existence of this instrument. Though it was duly recorded, not being in its chain of title, appellee was not bound to take constructive notice of its recordation, and the failure to discover it on record did not raise against it the issue of failure to exercise ordinary case. White v. McGregor, 92 Tex. 556, 50 S.W. 564, 71 Am.St.Rep. 875; Houston Oil Co. v. Kimball, 103 Tex. 94, 101, 122 S.W. 533, 124 S.W. 85; Delay v. Truitt (Tex.Civ.App.) 182 S.W. 732; Leonard v. Benfford Lumber Co., 110 Tex. 83, 216 S.W. 382.

On the theory that the lease contract was insufficient to support the defense of innocent purchaser, appellants have presented a most interesting argument, based upon National Oil & Pipe Line Co. v. Teel, 95 Tex. 586, 68 S.W. 979. Because the express consideration was only $1 and an obligation to pay $1,400 in oil, conditioned upon the discovery of oil, appellants contend that the instrument was without consideration, unilateral, and, therefore, optional in its nature. In its legal implications this instrument is on all fours with the lease before us in Jones v. Bevier, 59 S.W.(2d) 945, 948. On the principles of law there announced this instrument conveyed to the original lessee an interest in the land, that is, as said in Jones v. Bevier, the lease "operated as a present conveyance of the oil and gas under the premises described in the lease, and vested in appellee a determinable fee in the oil and gas in place." On this construction it follows that appellees, holding under a regular chain of title from appellants, could assert against them the defense of innocent purchaser.

We say in this case, as we said in Jones v. Bevier, that if the instrument required a consideration one was affirmatively expressed on its face, (a) the $1, and (b) the implied obligation to drill offset wells.

We cite Jones v. Bevier as controlling the construction of this instrument because the Supreme Court in that case, against a very able review of the author-

ities now relied upon by appellants, refused the petition for writ of error.

From what we have said, it follows that the judgment of the lower court should be in all things affirmed and it is accordingly so ordered.