**SHELL PETROLEUM CORPORATION et al. v. HOWTH.**

No. 3239.

Court of Civil Appeals of Texas. Beaumont. July 27, 1939.

Rehearing Denied Nov. 15, 1939.

On Motion to Retax Costs Nov. 29, 1939.

See 135 S.W.2d 197.

COMBS, Justice.

On the 5th day of September, 1936, appellee, C. W. Howth, as plaintiff, filed his original petition in this cause, naming as defendants Shell Petroleum Corporation, Ford Clevenger, O. H. Noland, C. O. Wier and a group of parties which we shall designate as the "Gregory Heirs". For cause of action appellee alleged the following facts: (1) On the 12th day of January, 1931, appellee owned in fee simple, and was in possession of, a certain tract of land, a part of the A. Horton survey in Jefferson County. On that date he executed to the Shell Corporation, on the nominal consideration of $10 and certain other considerations named in the instrument "an option agreement or contract to acquire a mineral lease" on two subdivisions or tracts of his land in the A. Horton survey, tract No. 1 described as containing 45.56 acres of land, and tract No. 2 as containing 66.65 acres of land. By supplemental agreement, executed by appellee and Shell Petroleum Corporation on the 3d day of October, 1933, based upon an actual survey, the description was corrected so as to describe the land as containing 117.12 acres. By the terms of this agreement no title was invested in the Shell Petroleum Corporation, denominated in the contract as lessee, "but only the right to acquire a mineral estate or interest therein upon precedent conditions to be complied with by Shell Petroleum Corporation;" certain of these conditions were plead—the duty and right to pay "delay" rentals which were regularly paid, etc. (2) It was further alleged that Shell Petroleum Corporation had forfeited all interest in the contract by the following facts: In the latter part of July, 1936, Shell Petroleum Corporation discovered oil on a tract of land about a half mile from appellee's land by drilling thereon an oil well. After discovering this oil, Shell Petroleum Corporation entered into a conspiracy with the defendants Noland, Wier and Clevenger, to search out and find the heirs of Thomas W. Gregory, decd., who at one time held an executory contract under appellee's "predecessors in title," whereby Gregory had the right to purchase the land, and procure from the Gregory heirs a power of attorney, to be taken in the name of Noland, and also to secure "certain other conveyances and contracts"; this scheme originated with Shell Petroleum Corporation and its agents, and was financed by them. The

J. P. Adoue, of Houston, Orgain, Carroll & Bell and Melvin Combs, all of Beaumont, Cain & Wheat, of Liberty, Stevens & Stevens and R. H. Whilden, all of Houston, Thompson, Mitchell, Thompson & Young, W. K. Koerner, and C. P. Berry, all of St. Louis, Mo., and A. E. Groff, of Houston, for appellants.

W. D. Gordon, Howth, Adams & Hart, and Gaston H. Wilder, Jr., all of Beaumont, for appellee.

Gregory heirs had no title; more than 15 years prior to the filing of this suit appellee had acquired all interest in the land from the owners of the legal title, and also from the Gregory heirs; he had fenced, claimed, cultivated, used and enjoyed the land more than 15 years, thereby perfecting title under the statutes of limitation; (3) Shell Petroleum Corporation and the other conspirators searched out and found the Gregory heirs, secretly and without knowledge of appellee, and induced them to assert a false and fraudulent claim to appellee's land, and induced them to enter into a contract whereby "the fruits and revenues of the land" were to be divided, seven-eighths to Shell Petroleum Corporation, and one-eighth to the other conspirators and the Gregory heirs. These things were done by the conspirators secretly and without the knowledge of appellee, and to his great injury. All expenses incurred in securing these contracts from the Gregory heirs were paid by Shell Petroleum Corporation and its fellow conspirators, for their joint benefit and behalf. The Gregory heirs were induced by the conspirators, acting jointly, to assert a false and fraudulent claim to appellee's land which they had never before asserted, though some of them had lived in the immediate neighborhood of the vicinity of appellee's land for more than 15 years; and all of the Gregory heirs knew that they had no title in the land, that appellee owned the fee simple title thereto, and during the 15 years had acquiesced in his title; (4) acting together, the conspirators secured a power of attorney from the Gregory heirs, and Noland, Wier and Clevenger, and the Gregory heirs, acting together, executed to Shell Petroleum Corporation a mineral lease on appellee's land "for a previously agreed large cash consideration." Asserting a claim under the contracts executed to it by the Gregory heirs, Shell Petroleum Corporation claimed a right to go upon appellee's land and develop it for oil, to the exclusion of the duty owed by it to appellee to develop the land for his benefit and, claiming under the contracts from the Gregory heirs, Shell Petroleum Corporation asserted a title to appellee's land as against the title it held under appellee; (5) by acting with the Gregory heirs and its fellow conspirators, in the manner detailed above, and by its bad faith towards appellee, Shell Petroleum Corporation "forfeited" all rights, title or claim "un-

der its contract with appellee, executed on the 12th day of January, 1931"; (6) the acts committed by Shell Petroleum Corporation were fraudulent and to appellee's injury, and were within the provisions of Arts. 430 and 430a of the Penal Code, Vernon's Ann.P.C. arts. 430, 430a; (7) under its contract with the Gregory heirs, and its fellow conspirators, Shell Petroleum Corporation acquired no title or interest in appellee's land; it was not necessary for Shell Petroleum Corporation to make the contract with the Gregory heirs "in aid or protection of an estate which it did not own" or acquire under its contract with appellee; all interests in the land were owned by appellee and subject to its conditions conveyed by him to Shell Corporation by the contract dated the 12th day of January, 1931, that is to say, that contract was an optional contract and under its provisions Shell Corporation had the right to acquire all right, title and interest in the land covered by its provisions; (8) by instigating the Gregory heirs to assert a false and fraudulent claim to appellee's land and to trespass thereon, and to assert a false claim to his property, Shell Petroleum Corporation "has forfeited and abandoned all claims to further hold optional rights to acquire" appellee's property, and has "estopped" itself to assert any rights under that contract; (9) appellee alleged that "through these unlawful acts, his title has become clouded by the defendant, and its marketable value greatly impaired. That as a natural consequence of such fraudulent assertions so precipitated against him he is compelled to resort to otherwise needless expenses incidental to the remedies herein sought against them. Plaintiff therefore alleges that he has been damaged by reason of the premises in actual damages in excess of one hundred thousand ($100,000) dollars, and that there should be awarded against the promoters of this conspiracy, as hereinbefore alleged, exemplary damages in the sum of one hundred thousand ($100,000) dollars, particularly as to the defendant, Shell Petroleum Corporation, whose managing officials and executors are alleged to have authorized, participated in and procured the illegal acts and conduct herein complained of, whereby said corporation should be made to respond therefor."

Appellee prayed that the contract executed to Shell Petroleum Corporation by the Gregory heirs, and its fellow conspira-

tors, be cancelled as casting a cloud upon his title; that his contract with Shell Petroleum Corporation, dated the 12th day of January, 1931, be cancelled, and, in connection with this prayer, appellee offered "to do equity"; he prayed further for his actual and exemplary damages and for general and special relief, and for costs of suit. The defendants plead general and special demurrers, general denial and pleas of not guilty.

Appellee correctly summarizes the pleadings of the Gregory heirs, as follows:

"The Gregorys, through J. P. Miller and C. F. Stevens as counsel, filed formal answer October 13, 1936. Wier and Noland filed a similar answer December 11, 1936. The Gregorys then filed a first amended answer and cross-action on December 11, 1936. It consisted of the following namely, Exceptions 1, 2 and 3 to the plaintiff's petition as insufficient, and in the fourth and fifth paragraphs a general denial and plea of not guilty was made.

"In the sixth paragraph it is alleged that a deed signed by Sam Gregory, Mary Gregory and the other Gregory heirs, dated 3rd day of September, 1921, to Howth and O'Fiel, recorded in Jefferson County, was made pursuant to the employment of Howth and O'Fiel in the defense of Ralph Gregory to defend him against a charge of murder. The allegation is in this language:

"'That under said employment the said Howth and O'Fiel were to be paid the sum of one thousand ($1,000.00) dollars as attorneys' fees for defending Ralph Gregory, and whatever the form of the instrument signed by the parties above named, apparently in the form of a conveyance, it was so signed by the said grantors and it was so understood by all the parties connected therewith, particularly the said Howth and O'Fiel, to be a mortgage to secure the payment of the said one thousand ($1,-000.00) dollars attorneys' fees. That the said Mary J. Gregory and the other parties signing said instruments were lead to believe by said Howth and O'Fiel that they had actually signed a mortgage upon said premises described in said instrument.'

"This paragraph of the answer contains a description of the land embraced in said instrument.

"The paragraph winds up with this language:

"'But that the said Howth and O'Fiel, being lawyers, over-reached and mislead the said defendants in this cause who appear to have signed said instrument. That these defendants had no knowledge that they had signed what purported to be a deed until about the ——— day of July, 1936.'

"In the seventh paragraph of this answer in reply to the plaintiff's plea of limitation, they pleaded the minority of three of the children of Gregory, and in the eighth paragraph pleaded the coverture of certain of the children, giving the dates of their marriage, etc.

"The ninth paragraph, after notifying the plaintiff to produce the deed on the trial, repeated the allegation that it was 'intended to be and was understood to be a mortgage to secure said debt to Howth and O'Fiel, wherefore the same is not such an instrument as will support the statute of limitation by adverse possession.'

"The tenth paragraph alleges that Howth and O'Fiel 'had entered into a conspiracy to defraud the defendants and to acquire an illegal title to said lands.'

"The eleventh paragraph alleges that David O'Fiel, about the years 1921 to 1929, 'represented the said Mary J. Gregory, as administratrix of said estate of Thomas M. Gregory, deceased, both in the Probate Court of Jefferson County, Texas, and in the District Court of Jefferson County, Texas, in which proceedings the land described in said purported deed to the said Howth and O'Fiel were involved in attempts to foreclose vendor's liens against the same, and that the said Howth and the said O'Fiel recognized the claim of the estate of Thomas W. Gregory to said property and the claim of these defendants, their actions in these regards showing that they held no hostile claim against these defendants.'

"The allegation concludes with the statement that such situation created a fiduciary relation during the period of 1921 to 1930, and that any rights acquired by Howth and O'Fiel inured to their benefit.

"The twelfth paragraph of this answer sought to bring in O'Fiel and his wife and a large number of other persons who had acquired interests in the land and to make them parties to this suit, and winds up with the allegation that according to their paragraph No. 6 they had only executed a mortgage in the form of a deed and sought

judgment for $50,000.00 damages and for the possession of the land.

"The thirteenth paragraph re-asserts 'all the facts set forth in paragraphs 1 to 11 of the foregoing answer and pray that the same may be considered a part of this cross-action.'

"The prayer concludes the paper by asking that said instrument to Howth and O'Fiel be 'adjudged to be a mortgage and the purported deed be set aside.' They prayed that all these new parties be made parties to the cross-action and 'for title and possession of the above described premises and that writ of restitution issue and for such other and further rents, damages and costs of suit, and for such other and further relief, special and general, in law and in equity, that they may be justly entitled to, etc.' "

The second amended answer of the Gregorys offered to do equity and pay off the Broussard and Ward indebtedness which appellee had discharged. This answer also eliminated the pleas of the prior answer which undertook to set aside the mortgage.

Plaintiff then plead a number of exceptions and the statutes of three, four and ten year limitations. During the progress of the trial the Gregorys filed a trial amendment wherein they alleged:

"Now come and offer to do equity and to pay to the plaintiff any liens of any character owned or held by him, particularly, against these defendants, under those certain vendor's lien notes and judgments, rendered in favor of J. E. Broussard, and of M. L. Ward, against Mary J. Gregory as the administratrix of the estate of Thomas M. Gregory, deceased, being the identical judgments offered in evidence by the plaintiff in this case during the trial thereof and prior to the filing of this trial amendment, and these defendants stand upon this trial amendment solely as alleging and averring their right to exercise the equity of redemption against said liens and judgments. And in this connection they say that they stand ready and willing and offer to pay off said judgments to the plaintiff, he being the owner of the same, in full; wherefore, they pray that they go hence without day and that the plaintiff take nothing by his suit, and that said defendants be adjudicated to be the owners of the premises in controversy upon their paying off and discharging said liens and

judgments. They further pray for full general and equitable relief."

By his charge the court instructed the jury:

"Gentlemen of the Jury:

"The court holds in this case as a matter of law that the title to the land involved in this controversy is, under the undisputed evidence, invested in C. W. Howth, the plaintiff."

The charge submitted to the jury the following issues, all answered in the affirmative:

"Special Issue No. 2: Do you find, from the preponderance of the evidence, that the Shell Petroleum Corporation sought to procure the lease executed by what is known as the Gregory heirs and Noland and Wier to itself for the purpose of asserting an adverse claim against the plaintiff, C. W. Howth?

"Special Issue No. 3: Do you find, from the preponderance of the evidence, that Ford Clevenger cooperated with Wier and Noland in securing the lease in controversy to the Shell Petroleum Corporation?

"Special Issue No. 4: Do you find, from the preponderance of the evidence, that Ford Clevenger shared with Noland and Wier in the financial receipts from the lease executed by the Gregory heirs and by Noland and Wier to the Shell Petroleum Corporation?

"Special Issue No. 5: Do you find, from the preponderance of the evidence, that the Shell Petroleum Corporation, by and through its representative, Ford Clevenger, instigated the assertion of claim for said property involved herein on behalf of the Gregory heirs against the plaintiff, C. W. Howth?

"Special Issue No. 6: Do you find, from the preponderance of the evidence, that the Shell Petroleum Corporation acted maliciously in instigating (if it did instigate) the assertion of claim for the property involved herein on behalf of the Gregory heirs against the plaintiff, C. W. Howth?

"Special Issue No. 16: Do you find, from the preponderance of the evidence, that the sales value if any of the property herein involved was defeated by the assertion of the claim to the said property by the Gregory heirs?

"Special Issue No. 17: Do you find, from the preponderance of the evidence, that the defeat of the sales value, if any,

of said property involved herein was directly and proximately caused by the acts of the Shell Petroleum Corporation in instigating (if it did instigate) the Gregory heirs to assert an adverse claim to said property?"

To question 18: "What do you find, from the preponderance of the evidence, to be the reasonable amount of the damages, if any, sustained by plaintiff, C. W. Howth, by the defeating of the sales value of said property (if it was so defeated)?" The jury answered $65,000. By its answer to question 19, the jury found that Shell Petroleum Corporation should pay appellee "some amount of money as exemplary or punative damages"; and by its answer to question No. 20, fixed the amount at $50,000. Questions 7 to 15 submitted to the jury the issues of attorney's fees and expenses incurred by appellee in prosecuting this suit, and the "loss of credit" suffered by appellee by reason of the false and fraudulent claims "advanced by Shell Petroleum Corporation against his land"; the jury assessed the following damages on these issues: Attorney's fees, $15,000; expenses, $1,000; damage to credit, $10,-000.

On the facts found by the court, it was decreed in his judgment that appellee "is and was invested" with the legal title to the land described in his petition, and in the cross action of the Gregory heirs, and that he "was vested with the legal title to said land a long time prior" to the time the Gregory heirs executed their powers of attorney, and prior to the execution of the mineral leases to Shell Petroleum Corporation. And it was decreed that the "powers of attorney and said mineral leases be, and same are hereby cancelled, set aside, vacated and held for naught"; it was further decreed, as a matter of law on the facts found by the court, that the Gregory heirs take nothing on their cross action against appellee as to the three tracts of land described in their cross action, a part of the A. Horton survey in Jefferson County, tract No. 1 described as containing 26½ acres, and tract No. 2 described as containing 61.5 acres, and tract No. 3 as containing 156.4 acres—the land thus described included the land covered by appellee's contract with the Shell Petroleum Corporation, dated the 12th day of January, 1931; the judgment "divested" the title to the land out of the Gregory heirs and "invested the title in appellee"; the Gregory heirs were perpetually enjoined from asserting any claim to the land as described in their cross action.

On the issues made by appellee against Shell Petroleum Corporation, Noland, Wier and Clevenger, the judgment recited all the issues submitted to the jury, and their answers thereto, and then awarded judgment in favor of appellee, against Shell Petroleum Corporation, Noland, Wier and Clevenger, jointly and separately, for the following items: attorneys fees, $15,000; expenses, $1,000; damages to his credit, $10,000; actual damages, $65,000; and exemplary damages, $50,000.

By the judgment, the contract executed by appellee to Shell Petroleum Corporation, on the 12th day of January, 1931, was "cancelled, set aside, vacated and held for naught" on the following findings made by the court, and recited in his judgment:

"And it further appearing to the court from the answers of the jury to the special issues above set forth that the said Shell Petroleum Corporation, cooperating with the said O. H. Noland, Ford Clevenger and C. O. Wier, procured and instigated the procurement of the power of attorney and the mineral leases hereinabove set forth for the purpose of setting up an adverse claim to the plaintiff to the land and premises described herein; and it further appearing to the court from the answers of the jury to the special issues above set forth that the defendant, Shell Petroleum Corporation, was actuated by actual malice in so doing; and it further appearing to the court that said Shell Petroleum Corporation attorned to said adverse claimants and recognized their said alleged claim to the land against the claim of plaintiff, C. W. Howth; and it further appearing that the contract, heretofore executed between the plaintiff and the said defendant, Shell Petroleum Corporation, dated January 17, 1931, recorded in Vol. 353, page 324 of the Deed Records of Jefferson County, Texas, is a mere option to acquire an oil and mineral lease and is not a conveyance in presenti of any portion or of any interest in the oil, gas and other minerals in and under said land herein described, and that the said option contract, together with the confirmation of the purported lease executed by the said C. W. Howth dated May 2, 1933, recorded in Vol. 378, page 205 of the Deed Records of Jefferson County, Texas, should be in all things cancelled, set aside and held for naught."

The motions for new trial of all the defendants were overruled on the 29th day of March, 1937. Shell Petroleum Corporation duly perfected its appeal by filing supersedeas bond. All the other defendants, except Clevenger and Susie B. Summers, who did not perfect an appeal, perfected their appeals by filing affidavits of their inability to pay costs; most of these affidavits were filed on the 29th day of April, 1937, more than 20 days, but within 30 days, from the date the motions for new trial were overruled; the affidavits did not recite that the affiants lived out of Jefferson County, where the case was tried; the district court of Jefferson County by law could continue, and in fact did continue, in session more than eight weeks.

## On Rehearing.
### Opinion.

 Appellee has moved to dismiss the appeal of the Gregory heirs on two grounds; (a) they failed to perfect their appeal by filing appeal bonds, but filed in lieu thereof affidavit of inability to give bond for costs, and under Art. 2092, Vernon's Ann.Civ.St., designated by appellee as the City Practice Act, no provision is made for appeals on pauper's affidavit; and (b) if in error in that contention, he makes the further point that the affidavits of inability to pay costs were not duly filed since they were filed more than 20 days after judgment overruling the motion for new trial, and it was not shown that said appellants were non-residents of Jefferson County. Both contentions are overruled. True the City Practice Act makes no specific provision for appeals by filing affidavit of inability to pay costs. But it is the clear intent of our statutes that any litigant desiring to appeal his case, and being unable to pay the costs, shall have the right to appeal his case by filing the required affidavit. The affidavit is in every respect in lieu of an appeal bond, and is subject to the same rules with respect to the time of filing.

 The second point is also overruled. On the recitals in appellee's petition filed by him as plaintiff in the trial court, all of the appellants except two were non-residents of Jefferson County. These allegations invoke the provisions of Art. 2253, Vernon's Ann.Civ.St., allowing the affidavits to be filed within 30 days after giving the notice of appeal.

 Appellee urges another point against the right of the Gregory heirs to appeal, to the effect that they failed to bring forward in their motion for new trial assignments of error against the judgment of the lower court sufficient to support their propositions of error, as set forth in their brief. The judgment was rendered against the Gregory heirs on an instructed verdict. The trial court instructed the jury that the Gregory heirs had no title and upon the court's finding of no title in them whatever title they may have was divested out of them and invested in the appellee by the court's judgment. An instructed verdict, to the same extent as a judgment sustaining a general demurrer, constitutes fundamental error. This was the holding of the Commission of Appeals in the Harlington Land & Water Co. v. Houston Motor Co., Tex.Com.App., 209 S.W. 145; opinion approved by the Supreme Court. That holding has not been limited or qualified by any subsequent holding of our Supreme Court. See also Stillman v. Hirsch, 128 Tex. 359, 99 S.W.2d 270. The statement made by appellants in their brief is sufficient to invoke the doctrine announced by the cited cases.

Having reached the conclusion that certain other holdings were erroneous, we have withdrawn the original opinion and are substituting this one in order to include a discussion of the following matters.

 On original submission, we held that the evidence raised an issue of fact for the jury that the deed from the Gregory heirs to Howth & O'Fiel was intended as a mortgage. On further study of the evidence we are convinced that such holding was erroneous. The deed in question was made in 1921 and on its face purports to be an absolute conveyance of the land. At the time the deed was made there was considerable indebtedness against the land and the Gregorys, in fact, had only an equity in it, which equity was probably less than $1,000. One of the Gregory boys, Ralph, was in jail under a felony charge and C. W. Howth and D. E. O'Fiel, then partners in the practice of law under the firm name of Howth & O'Fiel, were employed to represent him, and did represent him. Miss Hazel Gregory, a sister of Ralph, and then only 18 years old, made the trade with Mr. Howth for his firm to represent Ralph, and secured the execu-

tion of the deed by the others who signed it. Appellants' testimony was to the general effect that Mr. Howth demanded a fee of $1,000; that the Gregorys did not have the money but "put up the land" to Howth & O'Fiel to secure payment of the fee; some of the other Gregorys who signed the deed but who did not talk to Mr. Howth "understood" that the land was being put up or pledged as security for the fee. We think appellants' testimony on the point, viewed as a whole in the light of attendant circumstances and disregarding the testimony offered by appellee to the effect that the deed was an outright conveyance, was not of that clear and satisfactory character required to raise the issue that a deed absolute on its face was in fact a mortgage. Appellants' evidence left a number of important questions unanswered. If the conveyance was intended merely to secure the $1,000 debt, why was it not put in the form of a deed of trust? No apparant reason, such as a desire to evade the homestead law, existed for making the lien in the form of an absolute conveyance. When was the debt to be paid? What interest was it to bear? Why was no note executed to evidence it, as is the usual practice? Were the grantees simply to take and hold the land indefinitely until such time as the Gregorys saw fit to pay the debt? The whole testimony on the lien theory is nebulous, indefinite and uncertain, and wholly fails to negative the reasonable inference that any discussion about putting up the land as security, which might have occurred in the preliminary negotiations between Miss Gregory and Mr. Howth for the employment of Howth & O'Fiel, were not effectuated but were abandoned and the deed conveying the land executed instead. For 15 years, and until this suit was filed, there was no effort on the part of the Gregorys to pay the debt, or any part of it. There is no evidence that any demand was ever made on them for its payment. They never rendered the land for taxes after 1921. Mr. Howth took immediate possession of the land, farmed it each year, paid off the indebtedness against it and exercised full and exclusive rights of ownership over it. In 1929, he built a tenant house on it at a cost of more than $600, which he paid. In the meantime he bought Mr. O'Fiel's half interest, leased the land for oil, and conveyed portions of his royalty interest to others. Thus Mr. Howth dealt with the land as his own for some 15 years, and a good part of that time some of the Gregorys lived within a few miles of it and seemed to have raised no question as to his title. Under these undisputed facts, no issue of mortgage was raised. Even if it be conceded that the Gregorys understood that the deed was a mere mortgage, such understanding on their part would not change the deed to a mortgage, in the absence of an understanding on the part of the grantees to accept it as such. "It takes two to make a trade." Of course, if the Gregorys were induced to execute the deed under a mistake of fact and in the belief that it was a mortgage, such fact would be grounds to set it aside in a suit seasonably brought for the purpose. But no such issue is involved here. In this suit the attempt is simply to show that the deed is not what it purports on its face to be, but instead that by agreement of the parties it was and is a mortgage. We think the holdings of our courts deny the contention that the evidence as a whole was sufficient to raise that issue. Howard v. Zimpelman, Tex. Sup., 14 S.W. 59; Byrd-Frost, Inc. v. Elder, Tex.Civ.App., 92 S.W.2d 1134; Gazley v. Herring, Tex.Sup., 17 S.W. 17; Brewster v. Davis, 56 Tex. 478.

■ Certain of the Gregory heirs did not join in the deed of 1921 to Howth & O'Fiel. Of course as to those who did properly join in that conveyance the deed passed their title under the above holding. As to those of the Gregory heirs whose title was not passed by that deed, there is the question of limitation title under appellee's plea of the ten year statute of limitation, Vernon's Ann.Civ.St. art. 5510. Appellee's evidence of continuous, adverse occupancy and use of the land in controversy was sufficient to establish title by limitation, as a matter of law, as to all of the Gregory heirs except Ike Gregory and Billie Gregory Bourgeois, who were under the disability of minority up until less than ten years before the filing of this suit. As to these two heirs, appellee acquired title neither by deed nor by limitation. He asserts title under the doctrine of rescission of the executory deed executed to their ancestor, T. W. Gregory, and under which they claim. Under the deed to their ancestor, as and when executed, the claim of all of the Gregory heirs was merely executory, the vendor owning the superior title and the right of rescission. But suit was instituted on these notes by the holders and the liens foreclosed. See Gregory v.

Ward, 118 Tex. 526, 18 S.W.2d 1049. While under the holding in that case, the sale made under the district court judgment of fore-closure was insufficient to divest title, still it constituted an election of remedies by the then holder of the notes, and to whose rights Howth succeeded by purchase. By the fore-closure the right of rescission was lost under the doctrine of the election of remedies. Hill v. Preston, 119 Tex. 522, 34 S.W.2d 780. Under this holding, Ike Gregory and Billie Gregory Bourgeois still own their interest as heirs under their father, T. W. Gregory, subject to the payment of their prorata part of the original vendor's lien notes and interest, which they tendered to appellee as a mortgagee in possession. This holding, of course, in no wise affects our holding as to appellee's claim of limitation against the other Gregory heirs. Herndon v. Yount-Lee Oil Co., Tex.Civ.App., 119 S.W.2d 171, writ refused.

Appellants contend that appel-lee's suit for damages is in the nature of a suit for slander of title and that appellee wholly failed to make out a case entitling him to damages, either actual or exemplary, for the reason, among others, that there was neither allegation nor proof of any pending sale which was defeated with resulting loss to appellee by reason of the alleged slander. In slander of title cases it is generally held necessary to plead and prove a pending sale which was defeated by the slander as a prerequisite to recovery. 37 C.J. 131, 134; 27 Tex.Jur. 791; Houston Chronicle Pub-lishing Co. v. Martin, Tex.Civ.App., 5 S.W.2d 170. But that rule does not deny re-covery of damages in this case. As we con-strue the record, this is not an ordinary slander of title case, as for instance where one occupying no fiduciary relationship to another wrongfully and maliciously asserts against him an apparent but groundless claim of title and thereby defeats a pending sale. In this case, under the undisputed facts, appellant Shell Petroleum Corpora-tion took an oil and gas lease on appellee's land in 1931, after examination of his title, and paid him only a nominal consideration therefor. It was an "unless" or "wildcat" lease, imposing no drilling obligation or rental payment except at the election of les-see. From time to time its attorneys made certain objections to the Howth title, and he in good faith cooperated with them in curing record defects pointed out, and suc-ceeded in removing most of them. It re-newed its lease from year to year by paying the nominal renewal fee of $1 per acre in lieu of drilling. That lease was more than the conveyance of a determinable fee inter-est in the minerals. It created the relation-ship of lessor and lessee between appellee and the Shell Petroleum Corporation and, as lessee, the Shell Petroleum Corporation owed the utmost good faith to appellee in its dealings with the property. Yet, under ap-pellee's theory of the case, and the findings of the jury, it breached its obligations to the serious damage of appellee. Through its agents it approached the Gregorys, who up to that time had asserted no claim adverse to appellee, and secured from them powers of attorney to Noland and Wier by virtue of which the adverse claim was actively as-serted. It later took to itself an oil and gas lease from the Gregorys, covering the very same interest which it held under lease from appellee Howth. Under that lease they asserted not merely the interest of the two minors but the interest of the other Gregory heirs who denied the validity of the deed to Howth & O'Fiel, and disputed in toto Howth's title to the land and to the interest which he purported to convey by the lease to the Shell Petroleum Corpora-tion. At the time this adverse interest was acquired by appellant, it had invested in the property only the very nominal con-sideration paid to Howth. It had not de-veloped the property or made any invest-ments on it which it was forced in extremis to undertake to protect by such methods. Had it concluded that the Gregory title was superior to the Howth title, and so had promptly surrendered back to Howth the lease which it had obtained from him, it would occupy a different position before us. But it did nothing of the kind. It retained the Howth lease which completely denied his right to lease the property to others or to obtain development of it. It is a matter of common knowledge that when new develop-ments in the discovery and production of oil are in progress the lease and sale value of nearby lands fluctuate greatly. A piece of land may be worth many thousands of dol-lars today and next to nothing tomorrow. Hence it is of prime importance to the land owner in such situation that he be free to deal with his land promptly and deliver title, or make contracts with reference to it without delay. This is a valuable right. And appellants' conduct denied that right to appellee. The evidence shows that oil de-velopments and discovery of oil had occur-red in the near vicinity, and that the prop-erty in question had greatly enhanced in

2

value after Shell's lease was taken in 1931. Under these facts we believe that appellants are liable to appellee in damages under the principle announced in Humble Oil & Refining Co. v. Kishi, Tex.Com.App., opinion adopted by Supreme Court, 291 S. W. 538. It is our conclusion that appellee plead a justiciable cause of action, and had he owned all of the title, as found by the court, it is our further conclusion that the evidence was sufficient to support the judgment for the actual and exemplary damages assessed by the jury.

It appears on the face of the judgment that actual damages were awarded appellee on the theory that he was the owner of the absolute title to all the land in controversy. Under our holding, appellee owned only nine-tenths of the title, Ike Gregory and Billie Gregory Bourgeois owning an undivided one-twentieth each. The next question that presents itself to us is appellee's right to recover damages under allegations of ownership of the entire title and the finding by the court to that effect when in fact he owned only nine-tenths of the title. The jury awarded appellee $65,000 actual damages. Can this court affirm the judgment in appellee's favor for the actual damages awarded, less the interest owned by Ike Gregory and Billie Gregory Bourgeois? This question is answered in the negative by the holding of the Commission of Appeals in Humble Oil & Refining Co. v. Kishi, supra.

From what we have said, it follows that the judgment of the lower court in all respects must be reversed and the cause remanded for a new trial, except that part which denies recovery of the Gregory heirs, which will be affirmed except as to Ike Gregory and Billie Gregory Bourgeois.

In view of a new trial, we make the following conclusions on the propositions advanced by the Shell Petroleum Corporation in its brief: (a) The contract executed by appellee to the Shell Petroleum Corporation on the 12th day of January, 1931, was the ordinary lease contract; it was not, as contended by appellee, a mere option to acquire title to the minerals, but was a conveyance of the minerals. We gave that construction to leases of the character in issue in Bailey v. Shell, Tex.Civ.App., 95 S.W.2d 982, and Jones v. Bevier, Tex.Civ.App., 59 S.W.2d 945; writs refused in both cases. (b) After executing his lease to Shell Petroleum Corporation, appellee conveyed a fractional interest in his royalty to other parties; these vendees of appellee were necessary parties to his action to cancel the lease. Sharpe v. Landowners Oil Ass'n, 127 Tex. 147, 92 S.W.2d 435. (c) Appellee's lease contract to Shell Petroleum Corporation contained the following provision: "10. If lessor owns a less interest in the above described land, than the entire, undivided and * * * qualified fee simple estate therein, then all royalties and all rental and other moneys herein provided shall be paid or delivered to lessor only in the proportion which lessor's interest in said land bears to the entire undivided and unqualified fee simple estate therein."

Under this condition of the lease, the mere fact that Shell Petroleum Corporation may have taken lease contracts from Ike Gregory and Billie Gregory Bourgeois did not make them a trespasser or wrongdoer against the rights of appellee; as appellee's cotenant the taking of the lease did not, as a matter of law, constitute a violation of the duty they owed him. Roberts v. Thorn, 25 Tex. 728, 78 Am.Dec. 552; McFarlin v. Leaman, Tex.Civ.App., 29 S.W. 44. It had a perfect right to lease or purchase the interest of any cotenant of appellee. What we have held is that it had no right to put in motion a claim which denied in toto its lessor's title and actively assert it against him, while at the same time claiming all rights, title and benefits acquired from him by his lease.

Under its lease from appellee, Shell Petroleum Corporation was his cotenant; that contract did not create between them, in all its relations, the relationship of landlord and tenant. Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021; Hager v. Stakes, 116 Tex. 453, 294 S.W. 835; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27; Sigler Oil Co. v. W. T. Waggoner Estate, Tex.Civ.App., 276 S.W. 936; Humble Oil & Ref. Co. v. McLean, Tex.Civ.App. 268 S.W. 179; Id., Tex.Com.App., 280 S.W. 557. But, if the relation between appellee and Shell Petroleum Corporation in certain respects be construed as that of landlord and tenant, under the provisions of the contract quoted above, Shell Petroleum Corporation had the right to acquire any interest in the land not owned by appellee and attorning to the owner of that interest would not, as a matter of law, constitute a repudiation of the relationship of landlord and tenant as

264

between it and appellee. Roberts v. Thorn, supra.

The evidence was sufficient to raise the issues submitted to the jury by the questions copied above.

 Counsel's fees, expenses in preparing the case for trial, and the loss of credit, on the facts of this case, are not recoverable as actual damages; they are not considered proximate results of the wrong complained of; evidence on these issues may be received in support of punative damage. Houston Production Co. v. Taylor, Tex.Civ.App., 33 S.W.2d 202.

Without bringing forward the specific points made by appellants against the court's charge, defining terms, complaining that the charge was on the weight of the evidence, etc., these propositions are overruled, as are also the assignments against the admission of evidence and the failure of the court to receive certain evidence.

For the reasons stated, the judgment of the lower court is reversed and the cause remanded for a new trial, except as to the Gregory heirs other than Ike Gregory and Billie Gregory Bourgeois.